SILAS BENT, RECEIVER, Respondent, *v.* B. W. LEWIS, ADMINISTRATOR, Appellant.

### January 15, 1884.

1. CHANGE OF VENUE — PREJUDICE. — Prejudice of a trial judge, or of the community against the cause of a party applying is not ground for a change of venue.

2. —— That the trial judge sustains intimate personal and official relations to a prospective witness in the cause is not ground for a change of venue.

3. —— That the cause may ultimately be considered by a court of five judges one of whom is disqualified is not ground for a change of venue.

4. CHAMPERTY — RECEIVER. — An agreement by which the receiver's attorneys are to indemnify him against costs and to receive a percentage of the recovery, can not be shown to defeat an action brought by a receiver under authority from the court to bring suit when indemnified.

5. LIMITATIONS — FRAUD — TRUSTEES. — An appropriation to his own use, by a director of a corporation, of funds realized by his trust relation, and a concealment thereof, is so far fraudulent as that an action may be brought on the facts within ten years after a discovery thereof by the person aggrieved.

6. —— PLEADINGS. — A reply to a plea of the statute of limitations that the facts were not discovered until within a certain time is a sufficient averment that they were discovered within that time.

7. USES AND TRUSTS — CORPORATIONS — FRAUD. — Property transferred by a corporation to a broker for his services, becomes a trust fund for the stockholders when retransferred to a director of the corporation as a profit realized from his official aid to the broker.

8. —— ADMINISTRATORS. — Such a trust fund may be followed into the hands of the trustee's administrator.

APPEAL from the St. Louis Circuit Court, LINDLEY, J. *Affirmed.*

NOBLE & ORRICK, for the appellant: The right to a change of venue does not rest upon the discretion of the court. — *Corpenny* v. *Sedalia,* 57 Mo. 96; *Darby* v. *Stark,* 60 Mo. 51; *Dunklin Co.* v. *Clark,* 51 Mo. 60. The statute of limitation pleaded in the answer is a complete bar to this action; it is confessed by the reply, and the reply does not avoid it; if the reply were valid as a pleading, it is not supported by the testimony. — *Johnson* v. *Smith,* 27 Mo. 591; *Ricord* v. *Watkins,* 56 Mo. 555; *Ashurst's Appeal,* 60 Pa. St. 290; *Carr* v. *Thompson,* 87 N. Y. 160; *Rogers* v. *Brown,* 61 Mo. 194; *Wells* v. *Perry,* 62 Mo. 573. This suit is prosecuted on a champertous agreement. — *Barnes* v. *Strong,* 1 Jones (N. C.) Eq. 100; *Duke* v. *Harper,* 66 Mo. 60. If the fact that a suit is being prosecuted upon a champertous contract comes to the knowledge of the court in any proper manner, it should refuse longer to entertain the proceeding. — *Barker* v. *Barker,* 14 Wis. 142; *Webb* v. *Armstrong,* 5 Humph. 379; *Morrison* v. *Deaderick,* 10 Humph. 342; *Greenman* v. *Cohie,* 61 Ind. 201. Whatever claim the plaintiff in this case may have ever had, he has finally, and for a substantial consideration, with the approval of the court, settled and released unto Charles H. Peck and his assigns; and to-day he has no claim against any one, because of any of the matters stated in the petition, if he ever had. — *Hoffman* v. *Ins. Co.,* 32 N. Y. 413; *Barlow* v. *Scott,* 24 N. Y. 40.

T. T. GANTT and JOHN M. GLOVER, for the respondent: A trustee who accepts benefits in conducting the business of his *cestui que trust,* holds them in trust; and the directors of a corporation are trustees. — Lewin on Trusts, 318; *Gaskell* v. *Chambers,* 26 Beav. 360; *Bent* v. *Priest,* 10 Mo. App. 562. Where the case is one of fraud, the statute begins to run upon the discovery of the fraud. — *Hunter* v. *Hunter,* 50 Mo. 445; *Thomas* v. *Matthews,* 51 Mo. 107; *Rogers* v. *Brown,* 61 Mo. 187.

LEWIS, P. J., delivered the opinion of the court.

By a contract in writing, dated December 13, 1873, it was agreed that all the risks borne by the St. Louis Mutual Life Insurance Company should be re-insured by the Mound City Life Insurance Company, in consideration. whereof, all the assets and securities belonging to the St. Louis Mutual were to be assigned and transferred to the Mound City. The agreement included other stipulations — which need not be detailed — was duly executed by both corporations, and its provisions were, shortly afterwards, carried into substantial effect. The defendant's intestate, William J. Lewis, deceased, was at that time a director and president of the St. Louis Mutual. That corporation was subsequently dissolved, and the plaintiff was duly appointed and qualified as its receiver. The foundation of the present action appears in an allegation that a part of the assets of the St. Louis Mutual which were transferred, or to be transferred to the Mound City, to wit, the sum of $30,000, was received by the defendant's intestate, and by him appropriated to his own use. The original petition charges, in general terms, that this sum of money belonging to the corporation passed, without any lawful authorization, into the hands of one Charles H. Peck, and from his into the hands of Lewis, who received the same secretly, and with full knowledge that it was the property of the St. Louis Mutual Company, and not of the said Peck. The amended petition sets forth at length the situations of the corporations, respectively, at various times, with the pendency of negotiations between them, having in view, the execution of the contract mentioned, and that the said sum of $30,000, part of the assets of the St. Louis Mutual, was paid to the defendant (since deceased) in consideration of his using his position as president and director of the corporation in aiding and promoting the execution of the said contract for re-insurance. It avers that this sum of $30,000 was part of a greater sum which was, by the Mound City Company,

segregated and set apart, of the assets of the St. Louis Mutual, for the purpose of bribing the officers of the last named corporation into an adoption of the scheme of reinsurance, and that the same was never in fact transferred from the St. Louis Mutual to the Mound City. The court, upon a hearing of the evidence, gave judgment in favor of the plaintiff for $30,000.

Defendant complains that the court erroneously refused a change of venue, on his application. The application alleged prejudice in the judge before whom the cause was pending, and in the inhabitants of the city of St. Louis, against the defendant. As to the judge, it was averred " that the plaintiff in this case is the same as in the case of Silas Bent, receiver, against Priest, which last cause has been but recently heard, on and about charges and causes of action alleged by said plaintiff against said Priest, defendant therein, because of alleged illegal acts of said Priest as a director of the St. Louis Mutual Insurance Company, and in large part upon the same depositions and testimony taken in this present cause, and which depositions and testimony are to be used on the hearing of this present cause. That the issues, both of law and fact, are in great part the same in this cause as they were in said cause against said Priest. That, at the hearing of the cause between the plaintiff and Priest, the judge before whom the present cause is pending was called upon to pass upon the competency, relevancy, and weight and effect of testimony, and on and about the same issues of fact as he would, in the hearing of the present cause, be called upon to do, and that, in the said cause against Priest, the judge decided against Priest, not only on questions of law, but upon questions of fact involved, and that, by means of these acts and determination of the judge in the Priest case, being the same judge as in this case, he had become and was prejudiced in the present case against the defendant, and from the necessity of the case,

could not be entirely free, unbiased, and unprejudiced to try the present case.''

The proposition plainly embodied in this feature of the application is, that, when a judge has once heard and determined certain issues of fact and of law, he is thereby disqualified for again hearing and determining the same or similar issues, upon the same or similar testimony, between the same or different parties. Such a proposition has not the least countenance from any authority known to us. It would, if entertained, entitle every defendant in a suit on a promissory note to a change of venue, if the judge had been in office for six months, or less, in any mercantile community. Properly analyzed, the proposition resolves itself into a charge of prejudice against the cause or defence of the party applying, and not against his person. Our supreme court holds that such a prejudice is not a proper cause for a change of venue. *Charlotte* v. *Chouteau*, 33 Mo. 194.

Another point made in the application is, that a suit similar to the present one has been instituted by the same plaintiff against one of the judges of the St. Louis circuit court, which suit has been in some way adjusted, and the said judge has given his deposition as a witness for the plaintiff in this cause ; that there is a direct conflict between said deposition and the testimony of other witnesses regarding the acts and statements of William J. Lewis; and that, because of the intimate official and personal association and relations between the said judge and the judge before whom this cause is pending, the mind of the last mentioned judge would be greatly biased in regard to matters of testimony, etc. It is a sufficient answer to this point that no provision of law contemplates the disqualification of a judge to try a cause, by reason of any possible relations he may sustain towards proposed witnesses. Nor can any such relations have a legitimate bearing upon the question of prejudice against a party to the suit.

The application further alleges that, in a certain event, he would be entitled to have his cause considered by all the judges of the circuit court of St. Louis, whereas one of the said judges, for reasons before stated, would be disqualified to sit. There never was, or could be, any possible event or contingency in which a party was invested with an absolute right to have his cause heard by all the judges in general term. The right, whatever its extent, was always qualified by the provision of law which might exclude one or more of the judges for personal interest, or other cause. The right to a hearing by a quorum, or majority of the court, was the only unqualified right of a litigant, if any such existed.

The suggestions of prejudice in the inhabitants of the city of St. Louis have no better foundation than those having reference to the trial judge. They assume that many of those inhabitants are policy holders in the St. Louis Mutual, and therefore directly interested in a successful litigation by the plaintiff, and so exercise their influence in his behalf. It is added that there have been many newspaper publications of the depositions and testimony taken in the plantiff's behalf, whereby the inhabitants have become prejudiced, etc. It can hardly be necessary, after what is already said, to dwell on these suggestions. They affect the cause — and even that only indirectly and argumentatively — and not the party.

It is true that the defendant begins his motion for a change of venue with a direct averment of existing prejudice in the judge, and in the inhabitants, against the defendant himself. But he then proceeds to explain what he means by the averment, in each particular, as above shown. The only proper judicial effect must be applied to the party's own interpretation of his averments. Nothing in this conclusion is inconsistent with *Corpenny* v. *Sedalia* (57 Mo. 88). There it was insisted that the party applying for a change of venue should add some proofs to his statutory

averment of a want of knowledge of certain facts before a certain time. Sherwood, J., declared this to be unnecessary, showing the absurdity of requiring the party to prove a negative — " to establish by witnesses, however numerous or credible, that they knew that the applicant did not know," etc. Our conclusion requires nothing more of the applicant than he has furnished; but that is shown to be conclusive against him.

The objection that this suit is prosecuted upon a champertous agreement between the plaintiff and his counsel, appears substantially as it was presented in *Bent* v. *Priest* (10 Mo. App. 543). We find no reason to recede from the views expressed in that decision, and must hold that no chase of champerty was shown by the testimony. A similar remark may be made as to the defence of limitation. We held in *Bent* v. *Priest* (*supra*), that the circumstances of concealment and violation of trust obligations implied in the private appropriation by a director to his own use of moneys realized from his trust relation, and therefore belonging or due to the corporation, are so far characteristic of fraud as to bring an action founded upon such facts within the meaning of the Revised Statutes (sect. 3230) : " Fifthly, an action for relief on the ground of fraud, the cause of action in such cases to be deemed not to have accrued till the discovery by the aggrieved party at any time within ten years of the facts constituting the fraud." Fraud may inhere, not alone in false utterances, but also in the concealment of what ought to be disclosed. An interest in ordinary contract or property rights is generally presumed to be known to the claimant from its inception. But when the existence of the right is known, and can be known, to him only who withholds it from the rightful possessor, the spirit, policy, and meaning of the statute can not be more clearly exemplified, than in dating the accrual of the cause of action from the time of discovery by the party aggrieved. Such incidents belong peculiarly to the trust relation, wherein

the trustee is bound by the highest considerations, in law, as well as in morals, to keep his beneficiary informed of all matters affecting the condition of the trust. There can be no sort of doubt about the application of these principles to the case of an officer of a corporation, who receives money or emoluments under the circumstances described in the present petition.

It is insisted, however, for the defendant, that the plaintiff's reply to the answer, on this point, does not sufficiently allege the statutory condition which might defeat the bar of limitation. The language of the reply is: "Plaintiff says said matters, facts, and things were done secretly and fraudulently by said defendant's intestate, and were to the said plaintiff, and also to the said St. Louis Mutual Life Insurance Company, unknown, and were not discovered by the said St. Louis Mutual Life Insurance Company, or by the said plaintiff, until within five years next before the commencement of this suit, that is to say, until after the 15th day of February, 1877, which was within ten years next after the doing of the facts, matters, and things constituting said fraud." Learned counsel say that the negative form of expression here used, to wit, that the facts, etc., were not discovered until within five years next before, etc., does not amount in law to an assertion that the facts, etc., were discovered within the time stated. If this criticism is correct the statute itself is alike faulty. It declares that, in the cases specified, the cause of action shall be deemed *not* to have accrued till the discovery, etc. Yet counsel would surely not tell us that the law here fails to provide that the cause of action shall be deemed to have accrued on the discovery, etc.; and that, consequently, the period of limitation will never have a beginning in such cases. We think that the common interpretation of similar expressions will suffice for both instances. The statute assumes an alleged accrual of the cause of action, from the institution of the suit. The plaintiff's whole record in this case

declares the same thing, together with his discovery of th e fact, and leaves nothing for the reply to announce, except as to the matter of time.

The testimony tends to prove that, upon the consummation of the agreement for a transfer of assets from the St. Louis Mutual to the Mound City, a large sum, nearly $150,000, derived from the same assets, was handed to Charles H. Peck, presumably by way of compensation for services rendered in bringing about the arrangement, and that the sum of $20,000, part of the money received by Peck, was by him paid over to the defendant's intestate. That, when both the corporations had passed into the hands of receivers, each of those officers set up a claim against Peck for the whole amount received by him, as belonging to his corporation, respectively. A triple agreement was eventually entered into by the representatives of the corporations and Peck, whereby, in consideration of the payment by him of $25,000, he was released from all further claim by the corporations, or either of them, on account of the entire sum which he had received. This agreement contained the following provisions : —

That Bent and others (the receivers) " fully, completely, and without reservation, discharge, extinguish, and absolutely and forever release unto said Peck all and every claim, demand, or cause of action, or causes of action existing, or supposed to exist, or which may hereafter arise against said party of the second part, or his assigns, for or on account of said alleged real estate loans or securities, or choses in action, or money or other property transferred or delivered, or paid, or in any manner made over to said Peck (party of the second part), or for his use or benefit, by said Mound City Life Insurance Company, and also all and every claim, demand, or cause of action existing, or supposed to exist, against said Peck or his assigns, connected with, relating to, or growing out of, the transfer or attempted transfer of its assets, by the St. Louis Mutual Life Insur-

ance Company, to the Mound City Life Insurance Company, or any disposition or appropriation or use which have been made of said assets, or any portion or any part thereof.''

It is claimed for the defendant, that this agreement effected a complete discharge of his intestate from all liability, touching the subject-matter of this proceeding.

Let it be admitted that the intestate, as Peck's assignee, was entitled to the benefits of the release, in the same measure wherein they were conferred upon Peck. But surely neither the intestate nor the present defendant could ever claim anything more than this. Peck's controversy with the corporations was over the title to the money — each of three parties claiming it against the others. The agreement settled the ownership in Peck. So it did in his assignee. But its entire scope and purpose comprehended nothing beyond this, whether in the present or the future. It had no concern with a resulting or superposed trust, which might thereafter become annexed to the same ownership, from equitable considerations. Suppose that. A should sell his horse to B, with an absolute warranty of title that would operate a perpetual bar against any reclamation of the property by A in the hands of B or his assigns. Afterwards C, who, as a confidential agent, and trustee of A, has the charge and management of his affairs, accepts the same horse from B, by way of compensation, and profit realized, from having so managed the affairs of A, as to advance the interests of B. Would any one say that A's sale of warranty would operate a bar against his claim that C should hold the property as a part of the trust estate, in A's favor? Surely not. Nothing in Peck's relations with the corporations, or either of them, was suggestive of any trust in him, of a fiduciary character. But when the title, confirmed in Peck by the agreement, passed into Lewis, his assignee, a new element was introduced, for

which the agreement had made no provision. This was the use which equity attached to the new ownership, by reason of the fact that Lewis was a director and president of the St. Louis Mutual, and received the money as a profit realized from his official action in those capacities. Such a use could not attach, unless he had become owner of the money. The present action admits his ownership, as it must do, and asks that a court of equity declare the resulting trust. A decree for the plaintiff will confirm all that was acquired by any one from the release to Peck, and will yet execute the use in favor of the proper beneficiary.

The defendant contends that, upon the case made, in any aspect of the proofs, there should be no recovery by the plaintiff, and that the only proper claim against the intestate's estate, if any there be, belongs to the receiver of the Mound City Company, now called the Columbia. If this is correct, it must be either because the money in controversy, although regularly assigned by the St. Louis Mutual to the Mound City, has been unlawfully prevented from reaching the assignee; or because, assuming that a beneficial interest was vested in the St. Louis Mutual upon the receipt of the money by Lewis, such interest thereupon became the property of the Mound City, by virtue of the general transfer of all the assets of the St. Louis Mutual. In the first case, the supposed condition is wholly immaterial; since it is sufficient for the plaintiff's recovery, that the director received the money for the purposes charged, no matter from what source. In the second, the defendant has no right to concern himself about the claims of the Mound City, which is not a party to this suit. According to his own showing, the release to Peck would be a complete defence in any suit by the Mound City against this defendant, who is not affected by any trust relation between that corporation and his intestate. His responsibility, if any exists, is to the receiver of the St. Louis Mutual. It

will be time enough to consider the supposed claims of the Mound City, when its receiver undertakes to assert them.

The defendant saved some exceptions to admissions of testimony. We do not find among them any that can affect the propriety of the judgment. The captions and notarial certificates attached to the depositions of Wilbur F. Boyle described the suit variously by the titles, "*Bent, Receiver etc.*, v. *William J. Lewis, defendant*," *Bent, Receiver etc.*, v. *Lewis, Administrator*," and "*Bent* v. *Lewis*," with possibly some other changes, preserving always the surnames of the parties, respectively. These may have constituted clerical deficiencies, but we do not think they were such as could have failed to notify the witness in what cause he was sworn, or as should have rendered the depositions otherwise inadmissible. As to the testimony of the witness Peck about certain statements made to him by an unknown person, there may have been irregularity in its admission. But it does not follow that the judgment should be reversed. Upon a careful examination of all the evidence preserved in the record, we are of opinion that the plaintiff's case was fully made out on the merits, without giving the least consideration of the statements objected to. With the concurrence of all the judges, the judgment is affirmed.