STATE OF MISSOURI ex inf. ROY MCKITTRICK, Attorney General ex rel.
JORDAN W. CHAMBERS, Appellant, v. ELLIS JONES.—No. 39058.
—185 S. W. (2d) 17.

Division One, February 5, 1945.

*George L. Vaughn* for appellant.

*Samuel White* and *Alroy S. Phillips* for respondent.

904

DALTON, C.—Information in the nature of quo warranto, filed in the circuit court of the City of St. Louis on November 23, 1942, (1) to oust respondent from the office of constable of the fifth constabulary district of the City of St. Louis on the ground that respondent was not qualified to hold said office, because he was not a resident of said district at the time of his election to said office on November 3, 1942, and (2) to establish that relator was entitled to hold over in said office until a duly qualified successor had been elected and qualified. The trial court found the issues for respondent and relator has appealed.

At the general election held on November 8, 1938, relator was duly elected constable of the fifth constabulary district of the City of St. Louis for a term of four years and until his successor was duly elected and qualified. Relator duly qualified and entered upon his duties as constable and continued in said office until November 20, 1942, when respondent is alleged to have usurped, intruded into and taken

over said office of constable. At the general election held on November 3, 1942, respondent received the highest number of votes for the office of constable of said district, received a certificate of election from the proper authorities and, thereafter, gave bond and took oath, as required by law. On November 20, 1942, as stated, he took over said office and entered upon the discharge of his duties as constable.

Under the pleadings and evidence a single issue of fact was presented, to wit, whether respondent was a bona fide resident of the fifth constabulary district of the City of St. Louis on November 3, 1942.

Respondent and his wife owned a house at 2820 Stoddard Street in the City of St. Louis and respondent conducted an undertaking business on the first floor, handling from 125 to 140 funerals per year. Prior to May 1, 1940, respondent and his wife resided on the second floor, designated as 2820a Stoddard Street. There were five rooms on the second floor, including a small hall room and a bath. Two rooms on the third floor were occupied and used by two of respondent's employees. Respondent had six automobiles and four of them were kept in a garage on the rear of the lot. An enclosed porch in the rear of the second floor apartment was accessible from the apartment and by a stairway on the outside of the building. The porch was not used for sleeping purposes, except on occasions when it was necessary to put a cot out there to accommodate company. Respondent's wife "hung out her clothes" and put trash out there. The employees also used the porch, but entered by the outside stairway. There was a telephone in the apartment with an extension in the office downstairs. The same outside door was used for both the funeral parlor and for the apartment, since the stairway went up from inside the main front entrance.

In the spring of 1940, respondent and his wife had difficulties. About May 1, 1940, they "agreed to disagree," and respondent moved out. He rented a room at 3324 Bell Avenue and took his clothes and personal effects there. The property at 2820 Stoddard Street was in the eighth constabulary district, but 3324 Bell Avenue was located in the fifth constabular district.

While respondent's evidence tends to show that he and his wife ceased to live together, their difficulties were not such that they could not continue to deal with each other. By agreement respondent's wife continued to live at 2820a Stoddard Street, living alone. Respondent gave her a weekly allowance and she continued to prepare the meals for the two employees living on the third floor. She also took care of their rooms and laundry. When respondent was away from his place of business, she took messages for him on the telephone and at times looked after or assisted in the undertaking business. On occasions she sent respondent's funeral suit to the cleaners. Respondent was still

free to come up to his wife's apartment three or four times per week to drink coffee, making it himself or having her make it for him. At other times, respondent came up to her apartment when he had business to transact or when he wanted to use the telephone. On occasions his wife invited him to eat with her, but according to their testimony he had not slept in her apartment since they separated. Respondent retained the hall room on the second floor, where he kept a business suit and his funeral regalia. This room was not connected with the others, but opened into the hall. Respondent stayed all night there when, on account of late wakes or early funerals, his business required his presence at his business place.

On one occasion in the spring of 1942, respondent became sick at the Bell Avenue address and some one reported his illness to his wife. She promptly sent for him and brought him to the 2820a Stoddard Street address where he stayed in the little hall room for four or five days and nights and his wife took care of him. During this time, company came to see respondent and he put on a robe and slippers and sat in a chair in his wife's bedroom and received the visitors. While the respondent and his wife did not go out together socially after their separation, they often sat out in front of the funeral parlor on summer evenings and visited with the same people. They attended the same church and frequently walked there together, "right around the corner" from the Stoddard Street address. On occasions, when respondent's wife sang at public gatherings, she was taken to the meetings in respondent's automobile, along with other persons. The immediate friends and acquaintances of respondent and his wife were not advised of their separation. When fraternal and other groups met with respondent's wife, respondent was frequently present and assisted in entertaining guests.

After respondent moved to 3324 Bell Avenue in May, 1940, he slept there practically every night. Actually, however, he was there very little, usually coming in late at night and leaving early, before 6:30 A. M. Ordinarily he did not close his place of business on Stoddard Street until 11 P. M. and he opened up early. He testified that he rented the room at 3324 Bell Avenue with the intention of transferring his residence to that address and he was residing there on November 3, 1942.

When respondent first moved from 2820a Stoddard Street, he hoped for a reconciliation with his wife and, therefore, did not change his permanent registration for voting from 2820a Stoddard Street to 3324 Bell Avenue, but continued to vote in the eighth constabulary district where his place of business was located. He voted in the eighth district on August 6th and November 5th, 1940, and on March 7th, and April 1st, 1941. On these occasions, he gave his residence address as 2820 Stoddard (actually his place of business), because he knew he would not otherwise be permitted to vote. In April, 1941, all hope

of reconciliation with his wife having passed, respondent applied to the Board of Election Commissioners for the transfer of his voting residence from 2820a Stoddard Street to 3324 Bell Avenue. The transfer was made on the permanent records of the Board on May 27, 1941. Thereafter, to wit, on September 16, 1941, and February 17th, August 4th, and November 3rd, 1942, respondent voted in the fifth constabulary district, from which he was subsequently elected constable. On March 13, 1941, respondent's name appeared on the list of registered voters as residing at 2820a Stoddard Street. He was not listed at the Bell Avenue address when the list of voters was made up on September 30, 1940, or on March 13, 1941, but his name was listed as residing at 3324 Bell Avenue in lists dated August 11, 1941, June 24, 1942, and September 28, 1942. Respondent's name was not removed from these lists, although canvasses, as required by law, were made. Secs. 12121-12123, R. S. 1939.

At 3324 Bell Avenue, respondent rented the middle room on the second floor. There was evidence that he paid $12.00 per month for the room and 32 receipts for the monthly rent were offered in evidence. The landlord, tenants, and other persons corroborated respondent's testimony that he stayed in his room practically every night after he rented the room in May, 1940. He received mail and laundry at the Bell Avenue address. Some of it was seen or handled by witnesses who testified for respondent. One witness stayed in respondent's room by permission and, for some six weeks, slept with respondent every night. Other witnesses saw respondent's automobile parked in front of the property or saw him come in night after night, or heard him in his room. As early as 1940, respondent had suits, shoes, shirts, pajamas, socks, a bathrobe, and ''practically everything a man needed'' in his room. Respondent's tax return to the city assessor, dated September 15, 1939, showed respondent's residence as 2820a Stoddard Street. Respondent's state driver's license dated November 26, 1941, and his city driver's license dated December 13, 1941, showed his address as 2820 Stoddard, without indicating whether it was his residence or business address. When registering for the draft under the Selective Service Act on April 26, 1942, respondent gave, and his registration certificate showed, his place of residence as 3324 Bell Avenue.

Appellant's evidence, some of which has been stated, tended to show that respondent did not change his residence or separate from his wife, but continued to reside with her at 2820a Stoddard Street. Respondent's neighbors knew nothing of any separation, or of him residing elsewhere. They saw him about the premises early and late and noticed no change in his manner of living. Frequently during 1940, 1941, and 1942, they saw him on the sun porch on the second floor. Some mornings early, he was wearing pajamas. They saw him come out of the house and go to the garage nearly every morning. On summer evenings he sat out in front of the premises with his

wife and visited with friends and neighbors. On particular occasions he was seen upstairs in this bathrobe and house slippers or was seen coming down stairs to answer the doorbell. On some occasions no lights were on when the callers arrived or were on only upstairs. On one occasion respondent was seen resting in the daytime in his pajamas in his wife's bed, while his wife was in the kitchen. On another occasion a party had a meal with respondent and his wife on the second floor. On one occasion, respondent sent an employee upstairs to get breakfast. Much of appellant's evidence deals with specific instances over a three year period. There was some evidence tending to show that during part of the time respondent was supposed to be living on Bell Avenue his room was occupied by others, his effects were not in the room and he was not seen about the premises. Some neighbors had never seen him there. On one occasion respondent's landlord started to give respondent's mail to a visitor, mistaking the visitor for respondent, but the landlord explained the mistake by saying he was expecting respondent and thought he had arrived. There was no telephone at 3324 Bell Avenue until December, 1941. A St. Louis city directory delivered July 18, 1941, showed respondent was a funeral director and householder at 2820 Stoddard Street. Respondent's personal property tax returns for 1940 and 1941 showed his address at 2820 Stoddard Street.

This court has jurisdiction of this appeal because it involves "the title to an office in this state." Section 12, Art. VI, Constitution of Missouri of 1875; State ex rel. Davidson v. Caldwell, 310 Mo. 397, 276 S. W. 631, 633.

The parties concede that residence in the fifth constabulary district on November 3, 1942, was an essential condition to respondent's right to hold the office in question. Sec. 1370, R. S. 1939, as amended, Laws 1941, p. 325; Sec. 2785, R. S. 1939; Mullery v. McCann, 95 Mo. 579, 8 S. W. 774. The record shows that this issue of fact was submitted to the trial court and decided adversely to appellant. No declarations of law were given or refused. It has been held that a proceeding in the nature of quo warranto is in the nature of an action at law; that our review of such a case on appeal is not a hearing and determination de novo; and that the findings of fact by the trial court, if supported by substantial evidence, are conclusive upon us. State ex inf. McAllister ex rel. Sherman v. Hall (Mo. Sup.), 228 S. W. 1055; State ex rel. Thompson ex rel. Pugh v. Bright, 298 Mo. 335, 347, 250 S. W. 599, 601; State by Hammett ex rel. Roberts v. Stephens, 294 Mo. 504, 511, 243 S. W. 89, 91; State ex inf. Mansur ex rel. Fowler v. McKown, 315 Mo. 1336, 1344, 290 S. W. 123, 126. However, in view of the provisions of Secs. 2, 3 and 114 of the new code of civil procedure (Laws 1943, p. 353, et seq.), we shall review the court's finding upon both the law and the evidence as in a suit in equity.

■ Appellant assigns error on the court's action in refusing to permit him to show "the general reputation of the respondent in the neighborhood . . . as to his being separated or not from his wife." The particular evidence is not pointed out in appellant's brief, nor are we referred to any rulings of the court excluding such evidence. Appellant should have stated in his assignments of error or under points and authorities the specific matter complained of and should have designated where the adverse rulings could be found in the printed abstract of the record. Nevins v. Gilliland, 290 Mo. 293, 301, 234 S. W. 818, 820; Jeck v. O'Meara, 343 Mo. 559, 122 S. W. (2d) 897, 905; City of St. Louis v. Central Institute for the Deaf (Mo. Sup.), 149 S. W. (2d) 790, 791; Kleinschmidt v. Globe Democrat Publishing Co., 350 Mo. 250, 165 S. W. (2d) 620, 624. A careful reading of the entire record fails to disclose that any such evidence was excluded. The court did sustain an objection to a question including the words, "where ■ by the general reputation of the neighborhood . . . does Mr. Ellis Jones live?" But no offer of proof was made, and no error is assigned thereon. The assignment is overruled.

■ Appellant assigns error on the finding for respondent. Appellant contends that "there was no credible evidence in this case upon which to base a finding and judgment in favor of respondent"; that the judgment is contrary to law and against the weight of the evidence; and that "the court erred in not rendering a judgment of ouster against the respondent, and in not including therein an adjudication of the right of the relator to hold said office of constable . . . 'until his successor should be duly elected and qualified." Appellant insists that the evidence "was amply sufficient to prove that respondent was not a resident" of the fifth constabulary district at the time of his election; that the evidence clearly shows the respondent resided with his wife at 2820 Stoddard Street; that "the place where the family of any person shall permanently reside in this state . . . shall be deemed the place of residence" (Sec. 655, R. S. 1939); and that respondent's residence at 2820a Stoddard Street and his family relationship with his wife, prior to May 1, 1940, having been admitted, both residence and "marital status are presumed to continue until the contrary is shown by sufficient evidence to overcome the presumption."

It will be noticed that little of appellant's evidence directly contradicts respondent's evidence tending to show that respondent and his wife "agreed to disagree"; that he moved to 3324 Bell Avenue; that he rented a room and paid the rent; that he slept there practically every night between May 1940 and November 3, 1942; that he received mail, phone calls and laundry at that address; that he intended to establish his residence at the new location; that he applied for and secured a transfer of his permanent voting registration; that

his name was not removed from the lists of voters after canvasses were made; that he voted at four different elections from the new address; and that he gave 3324 Bell Avenue, as his place of residence when registering for the draft under the Selective Service Act. Much of the evidence of both parties could be true. Respondent presented some important uncontradicted documentary evidence of considerable weight. The only direct conflicts appearing in evidence were such as existed between the oral testimony of witnesses who personally appeared in the trial court. Sec. 114, subdivision (d) of the Civil Code (Laws 1943, p. 387) expressly provides: "The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

We think that any inference arising as to the continued existence of the proven fact of residence and family relationship, as was admitted to have existed prior to May 1, 1940, was fully overcome by respondent's evidence. We find nothing in the provisions of Sec. 655, R. S. 1939, which would prevent respondent from separating from his wife and establishing a new voting residence at a different address. Said section expressly provides that "the place where any person having no family shall generally lodge, shall be deemed the place of residence of such person." Sec. 655, supra; Exchange Bank of St. Louis v. Cooper, 40 Mo. 169, 170.

The necessary facts for the establishment of a new residence are well stated in the case of State ex inf. McKittrick v. Wiley, 349 Mo. 239, 160 S. W. (2d) 677, 686, 687, where after reviewing the authorities at some length, the court said: "The authorities indicate that, when one claims to have established a new residence, there must be a concurrence of physical acts evidencing such intent, such as physical presence or actual habitation in the place claimed as the place of residence, and the present intention evidenced by conduct or utterances there to remain indefinitely, or for a fixed time and then and there to establish residence."

We think the evidence in this record clearly shows that respondent did in fact move his place of abode from 2820a Stoddard Street to 3324 Bell Avenue; that long prior to November 3, 1942, he intentionally changed his residence to the new address where he was then lodging; and that on November 3, 1942, he resided at said address in the fifth constabulary district. State ex inf. McKittrick v. Wiley, supra, and cases cited; Barrett v. Parks, 352 Mo. 974, 180 S. W. (2d) 665; State ex rel. Ramey v. Dayton, 77 Mo. 678, 682; State ex rel. Taubman v. Davis, 199 Mo. App. 439, 203 S. W. 654, 656.

Appellant next contends that "the court was biased and prejudiced against the contention of relator that respondent lived at 2820 Stoddard Street and merely registered from 3324 Bell Avenue for the purpose of running for office"; and that "it was error on the

part of the Court not to disqualify himself as trial judge.'' This contention first appeared in appellant's motion for a new trial, which was filed after the cause had been heard and decided against appellant. It was alleged in the motion that the trial judge had at one time ''registered and voted from a place where he did not reside''; and that because of this prior personal experience ''the court was biased *against the contention* of relator.'' (Italics ours.) ˋSee, Bent v. Lewis, 15 Mo. App. 40, 44. The time, place and circumstances of the alleged personal experience, or the time of discovery of the facts by relator, were not alleged in the motion or shown by affidavit. Appellant's counsel, however, concedes that he knew the facts weeks before the cause was decided, but the record shows no objection until after the adverse decision. After the motion for a new trial was filed the court said to appellant's counsel: ''I think everyone in St. Louis knew the facts that you have in your motion, and which you did not allege first came to your attention after the trial.''

Appellant contends that the court should have sua sponte disqualified himself. Appellant filed no proper or timely application for a change of venue and no charge is now made that the court was interested in the cause or biased and prejudiced against any party thereto. See, Sec. 1058, R. S. 1939 et seq. There is no charge that the trial judge had at any time registered or voted unlawfully. See, Sec. 7, Art. VIII, Const. of Mo. We may not assume that the court was disqualified to hear the cause. We think the record shows that appellant was accorded a fair and impartial hearing and that the cause was decided in accordance with the weight of the evidence. In the absence of any showing of error in the record or prejudice to appellant the assignment is overruled.

■ Appellant contends the court erred in considering the physical condition of respondent's room, ''as the same appeared two months after this cause had.been under submission,'' ''without first having set said submission aside and reopening said cause for the hearing of further evidence, said visit . . . not having been made under any ruling of the court, or stipulation of counsel, for the further and later reception of evidence.'' Appellant says the inspection was ''without authority of law.'' This complaint appears for the first time in appellant's motion for a new trial. The motion alleges that the court of his own volition visited the premises at Bell Avenue two months after the cause had been submitted. In oral argument in the trial court and here, appellant's counsel concedes that he and respondent's counsel, at the request of the court, accompanied the court upon the alleged inspection trip. The record discloses no objection until the motion for a new trial was filed after an adverse decision and some three months after the Stoddard Street and Bell Avenue premises had been visited. Appellant's counsel in effect admits that he interposed no objection at the time and the record shows

912

no request that the submission be set aside and the case reopened. Although it appears that all facts and circumstances concerning the inspection were fully known, appellant waited to determine whether the effect would be favorable or unfavorable before complaining. The objection comes too late. Young v. Powell, 87 Mo. 128, 130; State ex inf. Major v. Arkansas Lumber Company, 260 Mo. 212, 275, 169 S. W. 145. An inspection of the premises by the trial court or jury was a matter within the sound discretion of the court. Young v. Pennsylvania Fire Ins. Co., 269 Mo. 1, 20, 187 S. W. 856, 861; City of St. Louis v. Worthington, 331 Mo. 182, 195, 52 S. W. (2d) 1003, 1010; 64 C. J., p. 1200, Sec. 1005. Reopening the case for additional evidence was within the discretion of the court. Marsden v. Nipp, 325 Mo. 822, 30 S. W. (2d) 77, 80. In any case, the facts ascertained on the inspection trip are not before us, or preserved in the record which we have reviewed and approved. The assignment is overruled.

█ Appellant further assigns error on the court's action in striking out relator's motion for a new trial on the theory that part of it was scandalous, scurrilous, defamatory, impertinent, irrelevant, and an unfair and false attack upon the integrity of the court. Appellant contends the court's action and ruling "constituted an abuse of judicial discretion." In view of the fact that we have reviewed the cause on its merits, and ruled the merits against █ appellant, it will be unnecessary to further consider this assignment.

The judgment is affirmed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.