Albert J. KELLEY, Plaintiff-Appellant,

v.

James W. PRINCE, Defendant-Respondent.

No. 50367.

Supreme Court of Missouri,

Division No. 1.

June 8, 1964.

Green & Raymond, James J. Raymond, St. Louis, for appellant.

Robert V. Niedner, Niedner, Niedner & Moerschel, St. Charles, for respondent.

PAUL VAN OSDOL, Special Commissioner.

Action for $50,000 damages for personal injury sustained by plaintiff Albert J. Kelley at about eleven fifteen in the morning of September 15, 1962, when the Ford automobile driven by plaintiff came into collision with the Dodge automobile driven by defendant James W. Prince on the western approach of the old St. Charles Bridge across the Missouri River between St. Louis and St. Charles Counties.

Verdict and judgment were for defendant and plaintiff has appealed.

Herein, plaintiff contends Instruction No. 9, given by the trial court at defendant's instance and submitting plaintiff's contributory negligence, was prejudicially erroneous. Further, plaintiff contends misconduct of a juror requires reversal and remand.

The main structure of the (old) St. Charles Bridge is straight. The bridge spans the Missouri River in a general east-west direction, and is several hundred feet in length. The main structure is surmounted by a steel superstructure. The two-lane roadway on the bridge is nineteen or nineteen and a half feet wide with concrete curb twelve inches high on either side. At the west end of the main structure the highway approach "curves in" from the northwest, the curvature of the roadway on the approach being a little more than fifteen degrees. At the west end of the main structure the two-lane roadway on the approach broadens to the width of a little over twenty feet.

The westbound Ford driven by plaintiff and the eastbound Dodge driven by defendant came into "sideswiping" collision on the west approach some relatively short distance west of the main structure of the bridge; the evidence of the distance from the main structure and the positions of the respective vehicles with respect to the center line of the roadway, at the point where the vehicles collided, was in conflict.

The left side of each vehicle was damaged. Each of the parties, plaintiff and defendant, introduced evidence substantial in tending to show that he was driving his vehicle on his own right half of the roadway and that the other was driving his vehicle partially over to his left of the center line.

The trial court, in instructing the jury, submitted defendant's negligence and plaintiff's contributory negligence specifically in failing to operate their respective vehicles on the right half of the roadway. Additionally, the trial court gave Instruction No. 9 which, as stated, submitted contributory negligence, and which instruction was as follows—

"The Court instructs the Jury that it is the duty of the driver of an automobile at all times to drive the same with the highest degree of care, that is, that degree of care which a very careful and prudent person would exercise under the same or similar circumstances.

"You are further instructed that if you find and believe from the evidence that the roadway of the bridge at the place where the collision mentioned in evidence occurred, and for a distance of 1500 feet Eastwardly thereof had a width of 19½ feet and had curbs 12 inches high along both edges of the roadway, and if you further find that while plaintiff was driving Westwardly along said bridge for said distance of 1500 feet Eastwardly of the place where the collision occurred, he was driving his vehicle with his left arm or elbow protruding from the window, if you so find, and if you further find that under the circumstances of the width of the roadway of the said bridge and of the presence of the curbs along the edges thereof, if so, that driving along the roadway of said bridge with an arm or elbow protruding from the window of the vehicle was negligent, and if you find that such negligence, if so, caused or contributed to cause plaintiff's injury, then your verdict must be for the defendant, on his cause of action for personal injury."

Preliminarily to the statement and examination of plaintiff's contentions of error in giving the Instruction No. 9, we deem it necessary to state evidence relevant particularly to the issue of plaintiff's contributory negligence as submitted in the instruction.

Plaintiff testified that, in moving westwardly in approaching and passing over the bridge, he was driving thirty-five miles per hour, but he slowed down his vehicle to twenty or twenty-two miles per hour when he approached the westerly end of the superstructure. He had driven over the bridge "numerous times," and he reduced speed "because I have always been afraid of that bridge.—It is a narrow bridge—. And when two cars meet each other on that bridge, there is very little tolerance."

As his automobile cleared the superstructure, plaintiff looked up and saw defendant's oncoming car "nearly astraddle of the center of the road" and thirty or thirty-five feet to the westward. Plaintiff further testified that, in driving westwardly in approaching the place of the collision, he was sitting with his right hand on top of the steering wheel, and with the tips of the fingers of his left hand on the steering wheel. His left elbow was "out from the window sill, that is, out from the exterior of the door, probably two inches, but out of the window about four inches." Photographs show and plaintiff testified the handle of the left front door (which handle, the photographs disclose, was but approximately two inches below the top of the solid lower panel of the door) was not damaged.

Plaintiff sustained a severe comminuted fracture of the left elbow involving the entire joint. He sustained no other injury. A physician who treated plaintiff, witness for plaintiff, described plaintiff's injury as "a side-swipe injury." The witness said like injuries he had theretofore observed invariably were suffered in cases "where someone was driving with an elbow on the window of the car."

Plaintiff initially contends Instruction No. 9 was prejudicially erroneous in that it permitted the jury to find plaintiff was contributorily negligent merely on the hypothesis that plaintiff drove over the narrow bridge with his elbow protruding from the car window, and without requiring an additional finding that plaintiff had knowledge and appreciation of danger of injury.

Plaintiff, in his argument, would have us look to what plaintiff terms "his uncontradicted testimony" that plaintiff's elbow protruded but about two inches from the exterior of the window sill or lower panel of the car door; that the left side of plaintiff's car was to plaintiff's right of and never closer than one or two feet from the center line of the roadway; and that the collision occurred in an instant after plaintiff first saw defendant's car. Hence, argues plaintiff, the factual situation shown by the undisputed evidence forces the inference that defendant's eastbound automobile negligently was driven partially over to the northward of the center line of the roadway. Says plaintiff, he was not required to anticipate and guard against the hazard of defendant's negligent movement over into the north lane of the roadway; and plaintiff says, the instruction (No. 9) is therefore erroneous because there was no evidence and no hypothesis in the instruction that plaintiff had the time or opportunity to remove his arm from the window sill after he had seen or had notice of defendant's negligent movement.

In these connections, plaintiff quotes language expressed in Elgin v. Kroger Grocery & Baking Co., 357 Mo. 19, 206 S.W.2d 501, at page 507, as follows—"As a general rule a man is not required to look for danger when he has no cause to anticipate danger, or when * * * it be caused by the negligence of another." Also, plaintiff quotes from Gitterman v. Danella, Mo. Sup., 356 S.W.2d 52, at pages 54–55, as follows—"An essential element of contributory negligence is that the person charged acted or failed to act with knowl-

edge and appreciation, actual or constructive, of the danger of injury which his conduct involved; and a corollary to that fundamental is that one's knowledge of the general condition from which the danger arose does not necessarily constitute knowledge and appreciation of the danger."

The reading of the statements of the evidence in the Elgin and Gitterman cases discloses situations unlike that of the instant case; and the evidence stated in those cases, especially with respect to the evidence or lack of it tending to show the plaintiffs' knowledge or appreciation of danger of injury is decisively different. In our case, plaintiff's argument is basically faulty in asserting his testimony (that no part of his vehicle was moving south of the center line) was undisputed or uncontradicted. Consequently, plaintiff's conclusion (that undisputed evidence forces the inference that defendant's vehicle was negligently driven partially over to the northward of the center line) is erroneous. As we have said supra, each of the parties, plaintiff and defendant, introduced substantial evidence tending to show that he was driving his vehicle on his own right half of the roadway and that the other was driving his vehicle partially over to his left of the center line. For example, a witness for defendant testified that Mr. Prince did not "ever get on the other side, the North side of the center line * * *. There was quite a bit * * * of the Kelly car on the south side * * * of the road * * *."

Moreover, as detailed supra, plaintiff's own testimony shows not only his knowledge of the general condition of the bridge and its approaches, but also his knowledge and appreciation of danger inhering. This, without more, disposes of plaintiff's initial contention and distinguishes our case from Gitterman v. Danella, supra, wherein this court (in holding the contributory negligence Instruction 9, given in that case, erroneous in failing to require the finding of knowledge and appreciation of danger)

expressly pointed out that plaintiff did not concede knowledge and appreciation of danger; her positive testimony was to the contrary.

Plaintiff further contends the Instruction No. 9 was erroneous in failing to require a finding that plaintiff's negligence as submitted "directly and proximately" caused or contributed to cause plaintiff's injury.

Plaintiff says this contention "arises from the premise that the collision is the cause which produced the injury." And plaintiff in his argument asserts that the mere presence of the elbow on the window sill "certainly is not the singular efficient cause of the injury." And, argues plaintiff, if the presence of the elbow on the window sill "can be construed as having combined with and entered into the producing cause—then, of course, the instruction must recite an expression of the combination of the two causes."

Essentially, plaintiff's argument, as we understand it, is that the instruction is erroneous in failing to *either* submit negligence in causing the "collision" in "combination" with the negligent conduct as submitted in the instruction *or* modifying the hypothesis of causation in the instruction by the use of the term "directly" (or "proximately").

As we best can analyze plaintiff's argument, plaintiff has confused the circumstance or fact of "collision" with the "legal" cause or causes of the "injury." And under the evidence as introduced in the instant case it seems clear that it was not essential that any conduct which wholly or in part brought about the collision should have been hypothesized in connection or in conjunction or in "combination" with the negligent conduct of plaintiff hypothesized and submitted in Instruction No. 9 as the cause or contributing cause of plaintiff's injury. We do not agree that, under the evidence in this case, the negligence, if so, of plaintiff in driving his automobile over the narrow bridge with his

arm or elbow protruding, could not be reasonably said to be the "singular" efficient cause of his injury as plaintiff apparently argues.

As stated *supra*, there was evidence from which it reasonably could be inferred that plaintiff was negligent as hypothesized in the instruction, and that there was causal connection between such negligence and plaintiff's injury, that is, under the evidence introduced in this case, it reasonably could be said that but for plaintiff's negligence as submitted he would have sustained no injury; and this, *even in the shown circumstance of the collision.*

Now, particularly noticing the "kind of negligent conduct" submitted in Instruction No. 9—driving his vehicle with his left arm or elbow protruding out of the window; and noticing the submitted causal connection—caused or contributed to cause plaintiff's injury; and further noticing the nature of plaintiff's injury as shown by plaintiff's evidence—fracture of the bones of the left elbow, such an injury as one suffers in a sideswiping collision if driving an automobile with the arm or elbow protruding, the inference is compelled that the instruction requires the finding of negligence which necessarily directly caused or directly contributed to cause, and necessarily formed a part of the efficient cause of the injury.

■ As a rule it is safer that an instruction submitting the issue of primary negligence or contributory negligence modify the submission of the essential element of causation by the use of the word "directly" (or "proximately"). Stumpf v. Panhandle Eastern Pipeline Co., 354 Mo. 208, 189 S.W.2d 223; Slates v. Joplin Butane Gas Co., Mo.Sup., 315 S.W.2d 808. See also Creech v. Blackwell, Mo.Sup., 318 S.W.2d 342; and Giambelluca v. Missouri Pac. R. Co., Mo.Sup., 320 S.W.2d 457. However, if, as here, "an instruction on contributory negligence requires the finding of negligent acts which, in the nature of things, necessarily contributed directly to cause the in-

jury and necessarily formed a part of the efficient cause thereof, then the instruction cannot be held erroneous because it does not require the jury to draw the inference which the law itself draws therefrom." Carr v. City of St. Joseph, Mo.Sup., 225 S. W. 922, 923; Barr v. Missouri Pac. R. Co., Mo.Sup., 37 S.W.2d 927; Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912; Wilson v. Toliver, Mo.Sup., 305 S.W.2d 423; Creech v. Blackwell, supra, Stumpf v. Panhandle Eastern Pipeline Co., supra; Giambelluca v. Missouri Pac. R. Co., supra; Killian v. Wheeloc Engineering Co., Mo. Sup., 376 S.W.2d 147.

We rule adversely to the contentions of error of the trial court in giving Instruction No. 9.

■ The transcript of the record shows the circumstances of an occurrence during the progress of the trial proper and of which plaintiff complains herein, and concerning which occurrence the trial court made inquiry after the jury had returned the verdict.

In the inquiry the following facts were developed—

At a noon recess which was declared by the trial court during the introduction of evidence in plaintiff's case-in-chief, and just after plaintiff's medical witness had testified, a juror called at the office of an agent of an insurance company. (The insurance company had been mentioned by plaintiff's counsel in the interrogation of the panel of veniremen on voir dire.) The juror asked the insurance agent what an insurance company would pay for the loss of an arm. The agent said, "Gee, that is a hard thing!—That is a hard thing to say." The juror then asked, "Well, isn't $2,000 or $2,500 what the compensation would pay?" The agent did not answer this question; the agent asked the age of the injured person; and, at this point in the conversation, the juror recalled that the insurance company represented by the

agent had been mentioned in the interrogation of the panel on voir dire, "and I (the juror) walked out as soon as I could." The juror testified the conversation had no effect upon the jury's deliberations and verdict—"We didn't get into a discussion of the information that I was seeking—the jury did not."

■ We have the firm opinion the juror's conduct was improper, although we have the further opinion the evidence introduced in the trial court's inquiry explained the occurrence as being devoid of corruption or other consciously intentional impropriety. The testimony of the juror indicated the jury, in the jury's deliberations, properly was proceeding initially in considering the evidence bearing upon the issue of liability, inasmuch as the verdict was for defendant. He said, in effect, the jury "didn't get into a discussion" of the amount of an award for the injury. We are not inclined to believe the occurrence could have been prejudicial. A trial court's action in a situation such as here requires the exercise of sound discretion. We can see no abuse of discretion in this case. The record in reciting the whole of the inquiry shows the able and experienced trial judge anxiously participated in the trial court's inquiry. No mistrial was declared. And, subsequently, when the instant contention was again called to the trial court's attention by assignment in plaintiff's motion for a new trial, the motion was overruled.

The judgment for defendant should be affirmed.

It is so ordered.

PER CURIAM:

The foregoing opinion by VAN OSDOL, Special Commissioner, is adopted as the opinion of the court.

All concur except HENLEY, J., not sitting.