David McDOWELL and Donna McDowell, d/b/a David McDowell Construction Supply and Cabinet Company, Plaintiffs–Respondents,

v.

Don SCHUETTE and Nancy Schuette, Defendants–Appellants.

No. 40498.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 21, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 12, 1980.

Application to Transfer Denied Feb. 9, 1981.

Albert C. Lowes, Thomas A. Ludwig, Jackson, for defendants–appellants.

John P. Lichtenegger, Jackson, for plaintiffs–respondents.

STEWART, Judge.

Plaintiffs, David and Donna McDowell, who are in the construction business, brought an action in two counts against defendants. In the first count they sought to recover the balance due under a contract for construction of a house for defendants. The second count was in quantum meruit for labor and materials furnished defendants that were not within the terms of the contract. Defendants filed a counterclaim in two counts alleging inter alia that they had been damaged because the house was not completed in "a good and workmanlike manner" and because the work was not timely completed. Judgment was entered upon a jury verdict for plaintiffs on both counts of their petition that assessed damages at $14,150 on Count I and $5,280 on Count II. Defendants were awarded $2,600 on Count I of their counterclaim. Defendants appeal from the judgment.

We affirm.

Plaintiffs entered into a contract with defendants to build a house upon land owned by defendants for the sum of $58,000.

The contract consisted of one page captioned "Agreement," six pages of specifications and a set of plans drawn by plaintiff Donna McDowell. Payment was to be made as the work progressed with a final payment of $19,300 payable upon completion of the house. There was no date set out in the contract for completion.

The contract contained the following provisions:

"1. That the Contractor shall furnish all labor and materials needed for the construction of a house on Owner's ground according to the plans and specifications attached hereto.

2. That the Owner may make separate contracts to secure extra items, services, or equipment not included in the general scope of specifications, provided the exact nature of their work shall be specifically shown and the contracts therefor attached hereto.

3. That no changes from the original plans and specifications shall be made, required, or collected for, unless both parties agree thereto in writing as to the extent of the changes and the amount to be paid or deducted therefor, before work thereon shall begin."

In most instances the specifications, as part of the contract, provided for specific items of work and materials. With respect to some items where there was a matter of choice for the defendants, the specifications provided for a dollar amount as an "allowance." As examples under the heading "Plastering and/or Paneling" it was provided:

"4. Paneling where desired at no extra cost but with a limit of $8.00 per sheet

5. Downstairs and Garage paneling allowance is $5.00 sheet"

Under "Carpeting and/or Inlaid Vinyl" it stated:

"a. Allowance for all floor covering to be $13.00 per yard (which includes installation over 64 oz. pad)

b. Downstairs bathroom allowance for floor covering to be $8.00 per yard installed"

This contract was drafted by plaintiffs. Other provisions of specifications will be set out where relevant to our discussion.

Construction started on the house on March 4, 1976. Defendants moved into the house on November 18, 1976. During the progress of the construction there were numerous discussions with respect to the quality of the work, various changes in the plans and selection of items of decor, and the exercise of options where the plans indicated work that was intended to be done in the future such as partitions on the ground floor level of the house.

Workmen were sent out on numerous occasions to correct deficiencies. After defendants occupied the house they wrote a letter to plaintiffs listing numerous items that were not properly done or were not furnished in accordance with the contract. Plaintiffs again sent workmen on many occasions to make corrections. Defendants made a $6,000 payment upon the last installment due under the contract. They were not satisfied with the work and refused to pay the balance of $13,300. Defendants also refused to pay for what plaintiffs denominate as materials and services that exceeded "allowances" and "descriptions" contained in the specifications. Plaintiffs had billed defendants $1,758.92 for these items less a credit for items that cost less than the "allowances." The evidence was that the credit amounted to $132.96. These items and the balance of $13,300 are the subject of Count I of plaintiffs' action which sounds in contract.

Plaintiffs also provided labor and materials "outside of the contract" for which they billed defendants in the sum of $6,163.08. This billing is the subject of Count II of plaintiffs' petition, an action in quantum meruit.

According to defendants' evidence there were still deficiencies. Defendants had spent over $100 on corrections and it would cost $2,489 to make necessary repairs that would still not put the house back in the shape it should have been in upon completion of the work. The judgment for defendants upon their counterclaim of $2,600

approximates the cost of repairs. Defendants also presented evidence that the value of the house as built by plaintiffs was $48,000. Plaintiffs' evidence tended to show that the house as built has a value of between $67,000 and $71,000.

Defendants urge six points relied on with fifteen sub points.

We decline to consider Point Relied On No. I because it does not comply with Rule 84.04(d). Though it will lengthen the opinion we are compelled to set out the point and the subpoints verbatim omitting the citations. The point relied on reads as follows:

"The trial court prejudicially erred in permitting respondent to repeatedly inject evidence into the case which was parol to the contract, and, therefore, inadmissible, and erred in doing this over the repeated objections of the appellants, and prejudicially erred in doing this after the motion in limine to exclude the parol evidence had been filed; this was error for the specific reason that the parties had entered into a mutually binding contract and said contract was complete and unambiguous, and, moreover, was a form contract used by the plaintiffs in their business and, therefore, it was prejudicial error to allow evidence of any agreements parol to the contract.

A. The trial court erred in allowing the plaintiffs to inject evidence parol to the unambiguous written contract in order to show that the plaintiffs were entitled to more than the amount set forth in the contract under Count I of their petition in the absence of a showing of some ambiguity in that contract for the reason that such a showing is required before outside evidence and may be admitted to vary an unambiguous contract.

. . . . .

B. If there is an ambiguity shown in the contract, that ambiguity must be construed against the party drawing the contract and not against the party merely signing it, and, therefore, the trial court erred in not construing the ambiguity against the plaintiffs in this case for the reason that the plaintiffs were the experienced parties in this transaction, and it was their contract that was in use, and as a result, any ambiguity should be construed against plaintiffs.

. . . . .

C. If, in fact, the plaintiffs wished to proceed on evidence outside the contract and if the plaintiffs wished to instruct the jury on the issue of the evidence which was parol to the contract and additional to the contract, the plaintiffs should have submitted an instruction which would have properly instructed the jury on the consideration of the contract as it was modified by parol evidence and the trial court should have given such an instruction, and the trial court erred in not instructing the jury properly on the amount due to plaintiffs as additions to the contract in question, if indeed anything was due to plaintiffs.

. . . .

D. The trial court erred in refusing to give Instruction Nos. A and B for the reason that such 'Withdrawal Instructions' would have corrected the error committed by the trial court when the trial court admitted evidence outside the written contract to explain and interpret an unambiguous written contract, and by the court refusing to give these instructions, the defendants were prejudicially harmed by the jury being allowed to consider evidence outside the unambiguous contract."

Rule 84.04(d) requires that:

"The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, . . . . Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule."

■ Although the point relied on is lengthy we cannot read it as pointing out what ruling or rulings of the court are sought to be reviewed nor are we advised

what portion or portions of the contract could have been considered ambiguous. Nor do we get any assistance from the argument portion of the brief. It makes no reference to any ruling made by the trial court. There are only four references to the transcript in the argument on this point. The pages of the transcript referred to in the argument do not contain any ruling by the trial court or have any direct bearing on the statements contained in this point.

We feel that we must repeat again the admonitions of *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978) found at page 686:

"The requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts. It is rooted in sound policy. Perhaps the most important objective of the requirement relative to the points relied on is the threshold function of giving notice to the party opponent of the precise matters which must be contended with and answered. Absent that, it is difficult, at the very least, for respondent's counsel to properly perform his briefing obligation. This is particularly so in a case such as this where the facts are complex. In addition, such notice is essential to inform the court of the issues presented for resolution. Clear statement of the points relied on facilitates full advocacy and affords the opportunity for clarification by meaningful questions directed to the issues stated in the points relied on. If the appellate court is left to search the argument portion of the brief (or even worse, to search the record on appeal) to determine and clarify the nature of the contentions asserted, much more is at stake than a waste of judicial time (even though in this time of increased litigation and heavy caseloads, that alone is sufficient justification for the rules). The more invidious problem is that the court may interpret the thrust of the contention differently than does the opponent or differently than was intended by the party asserting the contention. If that happens, the appellate process has failed in its primary objective of resolving issues raised and relied on in an appeal."

Point I and its subpoints present nothing for our review.

We have read the contract and the specifications. It is apparent that in determining the sum to be paid by defendants, specific amounts were set out as "limits" or "allowances." These were generally items of decor upon which defendants were to make a choice. It is clear that the parties intended that adjustments would be made in the price dependent upon the cost of the item as selected by defendants. Such selection was included in the general scope of the contract and did not require separate agreements when the selection was made.

We consider first defendants' contention that the court erred in refusing its proffered Instruction No. C on the measure of damages on their counterclaim which reads as follows:

" 'If you find the issues in favor of the defendants on Count I of defendants' counterclaim, you must award defendants such sum as you believe was the difference between the actual value of the home as it was completed by plaintiffs and what its value would have been had the home been properly completed by plaintiffs.' MAI 4.03 Modified—Tendered by Defendants."

The court gave Instruction No. 10 which was offered by defendants after Instruction No. C had been refused. Defendants' complaint is that Instruction No. 10, MAI 4.01, "does not instruct the jury to award damages to defendants so that defendants might receive the 'benefit of their bargain' and not merely 'just compensation' for defendants' damages."

Defendants tendered this instruction as MAI 4.03 modified. The MAI instruction is titled *Measure of Damages—Property—Misrepresentation.* Defendants rely upon *Reynolds v. Davis*, 260 S.W. 994 (Mo.1924), a case in which defendants represented that the farm they sold to plaintiff would have a

certain yield and that there were specific high quality deposits of lead and zinc on the land. The action was for fraudulent representations. The court there said at 997 that plaintiff was entitled to receive:

"such damages as will enable him to receive not only the difference between the actual market value of the property and the price which he paid therefor, but something over and above such damages, if any, represented by the difference between the price actually paid by him for such property and what its value would have been if it had been as represented. Such damages enable a defrauded party to obtain 'the benefit of his bargain.'"

The note with respect to the use of MAI 4.03 states:

"This damage instruction is to be used where plaintiff is suing for misrepresentations. It may also be used in breach of warranty cases (where supported by the evidence) if plaintiff elects this measure of damages . . . ."

■ It is apparent that MAI 4.03 is to be used only in cases of fraud or breach of warranty. Defendants did not plead or prove either of these theories. The trial court did not err in refusing an improper instruction and it was under no obligation to modify the tendered instruction or to give a correct instruction on its own motion. *Wors v. Glasgow Village Supermarket, Inc.*, 460 S.W.2d 583, 589 (Mo.1970).

■ Whether the instruction offered as an alternative by defendants and given by the court was a proper instruction is not an issue for our consideration.[1] Defendants may not complain of the instruction which they submitted. *Brown v. Globe Printing Co.*, 213 Mo. 611, 112 S.W. 462, 472[14–15] (1908); *Yust v. Link*, 569 S.W.2d 236, 241[12] (Mo.App.1978).

Defendants next contend that plaintiffs' verdict directing instruction on Count I of their petition was erroneous because it failed to negate the affirmative defense set out in Instruction No. 4 given at the request of defendants.

■ When an affirmative defense is properly submitted a plaintiff's verdict directing instruction is required to negate the affirmative defenses with the appendage which reads "unless you believe plaintiff is not entitled to recover by reason of Instruction No. _____ (here insert number of affirmative defense instruction)." MAI 26.02. *Trimble v. Sipes*, 506 S.W.2d 353, 357 (Mo. 1974).

■ An affirmative defense is one that seeks to defeat or avoid the other party's cause of action. A counterclaim is a cause of action in which a party seeks a judgment on his own behalf. It is a counterdemand existing in favor of a defendant against the plaintiff, *LaPlant v. LaPlant*, 505 S.W.2d 132, 134 (Mo.1974), and includes both set–off and recoupment. *Standard Insulation and Window Co. v. Dorrell*, 309 S.W.2d 701, 704 (Mo.App.1958). Whether a pleading is a counterclaim or an affirmative defense often depends on the intent of the pleader. *Staab v. Thoreson*, 579 S.W.2d 414, 419 (Mo. App.1979).

Instruction No. 4 given upon the request of defendants reads as follows:

"'Your verdict must be for the defendants on Count I of plaintiffs' claim if you believe:

First, plaintiffs either:

failed to complete the contract work in a good and workmanlike manner, or

failed to complete the contract in a timely manner, and

Second, because of such failure plaintiffs' contract obligations were not substantially performed, and,

Third, such defendants were thereby damaged.'

. Not MAI, patterned after MAI 32.01 and 26.02

Tendered by defendants."

■ This instruction as given would defeat plaintiffs' cause of action on Count I.

1. For future guidance however, see *Sands v. R. G. McKelvey Bldg. Co.*, 571 S.W.2d 726, 730 (Mo.App.1978).

The defendants, however, conceded throughout the trial and explicitly stated in their brief that:

"The plaintiffs alleged and proved that the written contract stated that the defendants owed them $13,300.00 (Tr. 2). In fact, there was never much disagreement about this point (except for the fact that the defendants sought some reduction of this amount in their counterclaims)."

Defendants also gave two instructions on their "counterclaim" in Count I, one referred to as a set–off and the other as a counterclaim. They also gave a damage instruction. Neither the pleadings nor the evidence warranted the submission of Instruction No. 4. Plaintiffs' verdict directing instruction need not negate defendants' erroneous "affirmative defense" instruction. *Coplin v. Hall,* 449 S.W.2d 8, 10 (Mo. App.1969).

Defendants' other complaint with respect to the instruction is based upon Point I of his brief. This complaint fails for the reasons set out above with respect to that point.

Defendants next contend that the court erred in giving Instruction No. 6 on behalf of plaintiffs. This is plaintiffs' verdict directing instruction on Count II, their cause of action in quantum meruit. The instruction was MAI 26.05 [2] omitting the clause "unless you believe that plaintiff is not entitled to recover by reason of Instruction No. _____ (here set out number of affirmative defense instruction including the· affirmative defense of payment)."

Defendants claim that this instruction is erroneous because "the basis of the plaintiffs' claim on this quantum meruit theory was a waiver theory, and the jury was not instructed accordingly." The items for which plaintiffs sought recovery in Count II were items that they contend were not within the contemplation of the contract. During the trial defendants admitted that they had requested and accepted some of the items such as three loads of chat, a refrigerator and trenching for a water line to a proposed barn site and that they were indebted for those items. There was a controversy as to some of the other items such as dirt that was hauled in and spread over the property. Defendants have thus admitted that plaintiffs had a cause of action in quantum meruit.

 When defendants argue that plaintiffs' claim in quantum meruit is based upon waiver of the contract they misunderstand the nature of the action. As said in *Berra v. Bieg Plumbing Co., Inc.,* 584 S.W.2d 116, 118 (Mo.App.1979) "[t]he basis of quantum meruit is a promise implied by the law that a person will pay a reasonable and just compensation for valuable services or materials provided at that person's request or with his approval." In fact a pleading that sounds in both express contract and quantum meruit will permit recovery on either theory warranted by the evidence. Allegations that are unnecessary to the cause upon which recovery is had will be treated as surplusage. *McDowell v. Miller,* 557 S.W.2d 266, 270[2–3] (Mo.App.1977). In the instant case the items for which plaintiffs recovered under Count II were not within the contemplation of the express contract. Some were specifically excluded from that contract and as to others defendants expressly conceded that they were outside the written contract. Waiver of an express contract was never an issue with respect to Count II. We find no merit to defendants' contention.

Defendants also contend that Instruction No. 6 was erroneous in that it did not refer to defendants' affirmative defense as set out in Instruction No. 7 which reads as follows:

" 'Your verdict must be for the defendants on Count II of plaintiffs' claim if you believe:

---

2. "Your verdict must be for plaintiffs on Count II of their Petition if you believe:

First, plaintiffs furnished lumber, refrigerator, building materials, dirt, chat, carpet, and construction labor and services to defendants, and

Second, defendants accepted such goods."

First, plaintiffs failed to complete the contract work in a good and workmanlike manner, and

Second, because of such failure plaintiffs' contract obligations were not substantially performed, and

Third, defendants were thereby damaged.'

Not MAI, patterned after MAI 32.01 and 26.02

Tendered by Defendants."

■ We first note that defendants were not entitled to this instruction because defendants conceded that they were indebted to plaintiffs for some of the items set out in Count II of the petition. Therefore, they were not entitled to an instruction that would defeat plaintiffs' action on Count II. See *Allen v. Purvis*, 30 S.W.2d 196, 199[1] (Mo.App.1930). Second, deficiencies in the express contract would not defeat the action for services and materials that were, as defendants term it, "outside the [express] contract." Instruction No. 7 was not a proper instruction. As a consequence the court did not err in giving Instruction No. 6 which made no reference to Instruction No. 7. *Coplin v. Hall, supra.*

■ Defendants further claim that plaintiffs were not entitled to an instruction in quantum meruit because it was not supported by the evidence in that there was no evidence as to the fair and reasonable value of the services and materials furnished is devoid of merit. Defendants ignore the specific testimony of a building contractor that the charges made for materials and services furnished under Count II were "fair and reasonable."

Defendants also complain that the court erred in giving plaintiffs' measure of damage instruction, Instruction No. 8, because it is an instruction that is not in MAI when MAI 4.04 was available. Instruction No. 8 reads as follows:

" 'If you find the issues in favor of the plaintiffs on Count II of plaintiffs' claim for damages, then you must award the plaintiff such sum as you believe to be the fair and reasonable value of the work,

materials, equipment, and labor done or of the services rendered in performing such extra work outside of and not covered by the contract as shown by the evidence.'

MAI 4.01 (Modified)–Tendered by Plaintiffs"

This instruction is adapted from an instruction that was approved in *Kaiser v. Lyon Metal Products, Inc.*, 461 S.W.2d 893, 900[4] (Mo.App.1970) before MAI 4.04 was promulgated.

The MAI Instruction 4.04 reads as follows:

"If you find the issues in favor of plaintiff, then you must award plaintiff the reasonable value of the goods furnished [with interest from _____ ]."

■ It is apparent that there was an applicable MAI instruction. Rule 70.02(c) provides that when an applicable MAI instruction is not used, failure to do so constitutes error, "its prejudicial effect to be judicially determined." *Coffer v. Paris*, 550 S.W.2d 915, 916 (Mo.App.1977). One test for judicially determining the prejudicial effect of an instruction is whether it places a greater burden on the party submitting it than would the applicable instruction. *Lindsey v. Pettus*, 604 S.W.2d 747 (Mo.App. 1980).

■ Instruction No. 8 substantially conforms to MAI 4.04 but adds the identifying phrase "on Count II of plaintiffs' claim for damages," the words "such sums as you believe to be the fair," the additional categories of "work, materials, equipment, and labor done or of services rendered," and the delimiting phrase "outside of and not covered by the contract as shown by the evidence." The inclusion of these phrases either had no effect on the issues, as in the case of the phrases "on Count II of plaintiffs' claim for damages" and "such sums as you believe to be the fair," or caused the plaintiffs to assume an extra burden.

In this case plaintiffs were proceeding in two counts, the first in contract and the second in quantum meruit or "outside the contract" as the parties referred to Count II

throughout the trial. The addition of the phrase "outside of and not covered by the contract" specifically narrowed the scope of recovery and imposed a greater burden upon plaintiffs. We believe that plaintiffs have shown that defendants were not prejudiced by the giving of this instruction in lieu of MAI 4.04.

■ Defendants also complain that Instruction No. 8 is argumentative. Our answer to this complaint is found in *Kaiser v. Lyon Metal Products, Inc., supra* at 900 where the court said that the instruction is "neither verbose, complex, argumentative nor repetitive." The court did not err to defendants' prejudice in giving Instruction No. 8.

Defendants next attack Instruction No. 5, plaintiffs' damage instruction on Count I for breach of contract. The instruction is MAI 4.01 modified. Defendants do not challenge the modification. This issue needs no extended discussion because it has been held that MAI 4.01 is the proper damage instruction in actions involving breach of construction contracts. *Forsythe v. Starnes*, 554 S.W.2d 100, 109 (Mo.App.1977).

As we understand defendants' next point they contend that the court erred when it told the jury that it had decided to allow the jury to view the home of defendants, how they were to be transported and who would be present, and then admonished them not to discuss the case or their view of the premises with anyone. Defendants claim that this was an oral instruction which should have been reduced to writing and given to the jury before they viewed the building.

The statement made by the court reads as follows:

"Ladies and gentlemen of the Jury, it's my determination that after hearing evidence for two days that a view of the premises involved would not be inappropriate and therefore I am going to rule that you be allowed to view the house in question. However, I want to do this with some very strict guidelines, within some strict guidelines.

You will be taken to the, to the home in a van, with a chauffeur'd driver. Eleven of you can go with that driver. I'm going to order the Bailiff to accompany you to the home. The Bailiff will take the twelfth juror to the home.

I will allow any of the parties, Mr. and Mrs. Schuette or Mr. and Mrs. McDowell, to go in their own separate vehicles. I will not allow the attorneys to accompany either the Jury, the parties or the Bailiff.

When you get to the home I want you to remember the caution that we have given you before. Do not discuss this case among yourselves or with anyone. If any of the parties, the Bailiff, the driver, if anyone, or a member of your own Jury, attempts to emphasize some portion of the house or to point something out to you, I want to know about it immediately.

You are to go to the home, view the home, and then return to the jury room; you are to do no more, no less.

Now, I hope we understand one another."

■ While it is true that Rule 70.02(a) requires that "all instructions shall be submitted in writing and shall be given or refused by the court according to the law and the evidence in the case" not every statement of the court to the jury is an instruction within the meaning of the rule. An oral direction or cautionary remark not a part of the law of the case need not be in writing. *State v. Jordan*, 506 S.W.2d 74, 78 (Mo.App.1974).

The first three paragraphs of the statement made by the court contain no instruction to the jury. In this portion of the statement the court announced its ruling upon plaintiffs' request that the jury be permitted to view the house and explained the manner in which this would be accomplished.

■ The fourth paragraph of the statement refers the jury to the admonition given to it in the last paragraph of Instruction No. 1, MAI 2.01, that was read to the jury at the beginning of the trial and given to the jury with the other written instructions

at the close of the case; it is the admonition which the court customarily gives at all recesses during the trial. The court gave similar admonitions on at least two other occasions during the trial. The admonitions given the jury throughout the trial are not instructions within the meaning of Rule 70.02(a) and the court did not err in not submitting such admonitions to the jury in writing. *State v. Jordan, supra.*

In any event the court was not required to give any written instructions to the jury before they viewed the premises. Written instructions are given to the jury only at the close of the case. Rule 70.02(a).

The defendants contend that the court erred when it did not grant a new trial because most of the jurors were transported to view the house in a bus owned by plaintiffs and driven by one of their employees. Defendants' counsel made an affidavit that he had learned of this alleged impropriety after the jury returned its verdict. In this case the jurors were cautioned not to speak with anyone including the driver of the vehicle and to report any attempt by anyone to emphasize any portion of the house.

Defendants made no attempt to produce any evidence which might show any impropriety on the part of the driver or the jurors. There is no evidence that the jurors even knew that the vehicle had been furnished by plaintiffs or that the driver was Mr. Cook, an employee of plaintiffs.

The action of the trial court in matters such as this requires the exercise of sound discretion on the part of the trial court. We find no abuse of discretion in this instance. *Kelley v. Prince,* 379 S.W.2d 508, 513 (Mo.1964).

We consider defendants' next two subpoints together because they are premised upon defendants' contention that the jury's view of the premises constituted evidence.

Defendants argue that it was error to bar counsel for the parties and the court reporter from the inspection of the house because their absence prevented objections to and preservation of evidence presented by the jury view. Defendants also claim that plaintiffs' introduction of expert testimony was an admission that laymen (the jury) could not understand the defects in the house. Thus, defendants believe the jury view improperly allowed evidence of lay opinion.

These subpoints are answered by the court's holding in *Koplar v. State Tax Comm'n,* 321 S.W.2d 686, 696 (Mo.1959):

"While a view may be taken by the triers of the fact to enable them to understand the evidence, such view cannot be substituted for evidence, nor can it constitute evidence in the case. We think its purpose is well stated in *Cowan v. Bunting Glider Co.,* 159 Pa.Super. 573, 49 A.2d 270, 271, as follows: 'Triers of fact, be they judges, jurors, viewers, board or commissions, may always visit and inspect the locus in quo to secure a better understanding of the evidence and to enable them to determine the relative weight of conflicting testimony. But a view cannot replace testimony; the visual observations of the trier cannot be substituted for testimony; and the only legitimate purpose of an inspection is to illustrate the evidence and provide a base for understanding and comprehending testimony upon the record.' "

The record indicates the court's comments to the jury regarding the disparity of the testimony served as the basis for the jury view of the house. The court allowed the view in order to determine the relative weight of the conflicting testimony as suggested in the *Koplar* case. Because the jury view did not constitute evidence, defendants' argument that the view was evidence of lay opinion fails.

The question of whether to permit an inspection of the premises is a matter within the discretion of the trial court. We find no abuse of discretion in this case. *State ex inf. McKittrick v. Jones,* 353 Mo. 900, 185 S.W.2d 17, 22 (1945).

Other issues sought to be raised with respect to the inspection of the premises have not been preserved for our review because the defendants did not raise them

at the time the court made its ruling. *Germann v. City of Kansas City*, 577 S.W.2d 54, 55[1] (Mo.App.1978).

Defendants contend that the court erred in admitting evidence of the amount of insurance that defendants carried on the property.

The testimony giving rise to this issue occurred during the cross–examination of the defendant, Don Schuette. In direct examination Mr. Schuette testified that if the house had been properly built in accordance with the plans and specifications it would have had a value of $58,000, that it was his opinion that the house as constructed had a value of $48,000, and that it would take $2,600 to make it "maintenance acceptable" and then it would only have a value of $50,000.

On cross–examination Mr. Schuette was asked what "[he had] it insured for" and he testified that it was insured for "around $60,000 probably." The effect of the cross–examination on this point was to impeach Mr. Schuette's direct testimony as to his opinion of the value of the house.

■ It is generally held that the amount of insurance on a building may not be introduced into evidence as direct evidence of the value of the building. *Manning v. McClure*, 168 Mo.App. 533, 154 S.W. 803, 805 (1913); *Maxwell v. Iowa State Highway Commission*, 223 Iowa 159, 271 N.W. 883 (1937); *Commonwealth Dept. of Highways v. Finley*, 371 S.W.2d 854 (Ky.App.1963). Whether such evidence may be used for the purpose of impeaching opinion evidence of the value of a building has not been specifically ruled upon in this State.

We begin with the premises that the scope and extent of cross–examination is largely within the discretion of the trial court. Any pertinent inquiry tending to impeach or discredit the witness is generally proper. *Board of Public Buildings v. GMT Corp.*, 580 S.W.2d 519, 531[15] (Mo.App.1979). Such wide latitude is to be allowed particularly in the cross–examination of a party who testifies in the case. *Roberts v. Emerson Elec. Mfg. Co.*, 362 S.W.2d

579, 584[8] (Mo.1962). Evidence that would not be admissible as proof of a substantial issue may be admissible for purposes of impeachment. *State ex rel. Kansas City Power & Light Co. v. Salmark Home Builders, Inc.*, 375 S.W.2d 92, 97 (Mo.1964). Although testimony may not be relevant to the substantive issues in the case it may be a relevant subject of cross–examination for purposes of impeachment.

In *Holmes v. Rivers*, 145 Iowa 703, 124 N.W. 801, 802 (1910), the court recognized that the amount of insurance on a building was not direct evidence of its value, but may indicate an estimate of value inconsistent with the opinion of value expressed by the witness and, if so, it may be elicited in cross–examination for the purposes of impeachment.

■ We believe the rule is sound and that it is compatible with the law of this State. See *State ex rel. Kansas City Power & Light Co. v. Salmark, supra*. The court did not abuse its discretion when it permitted plaintiffs to cross–examine Mr. Schuette with respect to the amount of insurance on the house.

The defendants next urge reversal because of misstatements of the law with respect to modification of written contracts that were made by plaintiffs' counsel to the jury in opening statement and in closing argument. Defendants have not referred us to any portion of the opening statement where the alleged misstatements were made. They quote extensively from a colloquy between the court and counsel outside the hearing of the jury which presents nothing for our consideration.

■ An objection to plaintiffs' reference to modification of written contracts by oral agreement in closing argument was sustained by the court. Defendants sought no other or further remedy. Where an objection is sustained and defendants seek no other relief they are not entitled to a new trial on appeal because they have obtained all the relief they sought. *Burian v. Dickens*, 527 S.W.2d 26, 29[4] (Mo.App. 1975).

**42**

As we read defendants' final point, it raises the same issue that was addressed with respect to defendants' complaint to the giving of Instruction No. 8. What we have said in respect to that issue is equally applicable here.

Finding no reversible error, the judgment of the trial court is affirmed.

KELLY, P. J., and SNYDER, J., concur.