**William F. KAISER, d/b/a Kaiser Erection Company, Respondent,**

**v.**

**LYON METAL PRODUCTS, INCORPORATED, a Corporation, Appellant.**

No. 25337.

Kansas City Court of Appeals, Missouri.

Oct. 5, 1970.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 7, 1970.

Application to Transfer Denied Feb. 8, 1971.

David H. Clark, Robert E. Northrip, Kansas City, for appellant; Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, of counsel.

Walter A. Raymond, Raymond, West & Mason, Kansas City, for respondent.

MAUGHMER, Commissioner.

This is a suit by a sub-subcontractor against a subcontractor to recover in quantum meruit for "extra work" necessarily and authorizedly done by him in the completion of his written contract to assemble and install lockers, wardrobe cabinets, bookcase units and similar items in ten military barracks buildings at Fort Carson, Colorado. Plaintiff had the verdict and judgment for $13,500.00, and defendant has appealed.

Hensel Phelps Company was the prime contractor on the Fort Carson job, but it is not directly involved in this litigation. The defendant Lyon Metal Products, Incorporated, is a corporation engaged in the business of "contracting for and furnishing manufactured material for installation of lockers, wardrobe cabinets, bookcase units, etc. in public buildings, industrial plants, army barracks and warehouses." Defendant had the subcontract to *supply* and *install* the lockers, wardrobe cabinets and bookcase units in the Fort Carson barracks.

Defendant first subcontracted the work of assembling and installing these fixtures to the Holm Heating and Sheet Metal Company. However, Holm's progress on the job and quality of work were unsatisfactory, or else Holm became disenchanted with the project. In any case, apparently to the satisfaction of both parties, Holm surrendered its contract and withdrew. Holm is not involved in this lawsuit and is mentioned only to tell the story in full.

The plaintiff William F. Kaiser d/b/a Kaiser Erection Company, is a sheet metal contractor specializing in the installation of lockers, toilet partitions, bookcase units and the like. In the latter part of May, 1966, at the specific request of defendant's Kansas City district sales manager, Mr. Richard "Dick" Brown, Mr. Kaiser sent two of his supervisory employees (Fred Eshelman and Carl Darby) to Fort Carson to aid the Holm Company on this project with which it was having difficulty. For two weeks Mr. Eshelman and Mr. Darby worked for Holm and then surveyed the job with respect to Holm's subcontract. Their findings were submitted to Mr. Kaiser who apparently had been approached by defendant regarding a take-over of the Holm subcontract. On June 3, 1966, defendant entered into a written contract with plaintiff under which plaintiff, for the sum of $62,000.00, agreed in part to "unload, distribute, erect, install locks, adjust doors and equipment in place * * * touch up all mars and scratches and dispose of all crates, boxes and packing", as to the lockers, wardrobe cabinets and bookcase units which, under government specifications, were to be installed at Fort Carson. These items were specifically identified by reference in the contract to numerous numbered erection orders, and totaled 310 wardrobes and 240 bookcase units for each of the ten barracks.

Four witnesses testified on behalf of plaintiff, namely, Mr. Fred Eshelman, who was foreman on the job from June 6, 1966 until November 22, 1966; Mr. John C. Swartz, who was foreman from November 22, 1966 until completion in March, 1967; the plaintiff Mr. William F. Kaiser; and Mr. Richard E. Brown, defendant's sales manager, who was called as an adverse witness.

A written computation containing fifteen separate items of alleged "extra work", and listing the number of hours expended on each item, together with the charge per hour, was submitted to defendant by plaintiff early in 1967. This list was prepared by Mr. Kaiser and Mr. Swartz in March, 1967, and was based upon estimates made by Mr. Swartz, which he said he made in November, 1966, by watching the doing of one job in each category, timing it with his watch, and then multiplying the hours consumed by the number of jobs. We set forth the full computation.

"LISTING OF MAN HOURS REQUIRED TO COMPLETE ADDITIONAL WORK CAUSED BY IMPERFECTIONS IN BUILDING STRUCTURES NOT COVERED BY CONTRACT.

HOURS DESCRIPTION OF WORK PREFORMED.

42 Removing angles from vertical columns installed by others in NCO rooms so lockers could sit flush in column to wall corners.

180 Removing concrete excess at base of columns in Squad and NCO rooms. Concrete excess at base of column would not allow cabinets to sit flush to column.

210 Trimming and fitting top closurers to unevenly poured ceilings and still hold trim square with cabinet.

226 Sanding, cleaning and painting of material stored on ground that was used in bldgs A–6 A–7. This material was stored on ground because contractor did not have buildings ready to recieve it at time of delivery. It had to be brought back to new condition or replaced.

430 Distributing, cutting shims and shimming all cabinets above normal to level cabinets so door operation would work. Shimming required in many cases up to 11/4″ above floor level.

(NOTE: Due to the unlevel conditions of the floors, the contractor was required to chip out and refill the floors at the uneven and obvious spots. All of the

regrinding of the floors after chipping and filling was *pre-formed* *after* the lockers were built, set & anchored and trimmed. This caused an extreme amount of dirt on the inside of the lockers and the contractor Back-Charged Kaiser for the cleaning.

396 Moving of material between buildings to replace damaged items or items that were short in original building shipments.

52 Sorting, accumulate and moving damaged material to central location on job for trucking claims agent to check and dispose of.

48 Prepare materials in bldgs A-9 & A-10 so final inventory as to shortages could be taken.

40 Count and recount matreial on hand to determine material to be ordered to allow completion of project.

24 Picking up paint at Railway Express and taking to Sherman-Williams for placing in spray cans. Picking spray cans up after they were finished and bringing to job for touch up work.

180 Cutting, distributing and nailing of wood strips to reinforce M & M1 fillers to A&B wardrobes. 4 various size strips required for each group of 2 lockers.

120 Cutting and trimming M & M1 fillers from 351/2″ to 341/2″ to top of bookcases.

365 Filling, sanding and repairing of dents and damage to side panels doors and other exposed areas that did not warrent replacing with new material.

24 Cutting, bending and building of 16 pcs. of material after final shortage material was recieved that still was required to complete project.

20 Inventory and haul excess of material after project was complete.

2357 Man Hours of Labor by Sheet Metal Workers

589 Man hours of Supervision

|  | Sheet Metal | Supervision |
|---|---|---|
| Hourly Rate | 4.55 | 5.10 |
| A.F.H. Pay | —— | 1.57 |
| 9.3% Tax, Ins. | .423 | .474 |
| Fringe Benefit | .17 | .312 |
|  | 5.143 | 7.456 |
| Overhead 10% | .52 | .75 |
| Profit 15% | .84 | 1.23 |
|  | 6.50 | 9.43 |

| 2357 | Man Hours at 6.50 per hour | 15,320.50 |
| 589 | Man Hours at 9.43 per hour | 5,554.77 |
|  |  | 20,874.77″ |

The jury's verdict was for $13,500.00, or approximately two-thirds of the amount claimed ($20,874.77). We do not, of course, know whether the jury disallowed some of the items entirely, reduced the hours total, or allowed a lesser charge per hour.

The witnesses Eshelman and Swartz, and the plaintiff Mr. Kaiser, each described the existing conditions which they said necessitated this extra work. They said that concrete had been spilled on the floors and it was necessary to remove it; that the floors and ceilings were not plumb, which required "shoring up", that the materials were sent by "railway, two or three trailers on what they call piggyback and they were transported to the job site by tractors." It was their testimony that the material did not arrive on schedule, that they were often required to store it in one barracks building and then move it to another when the construction had progressed to such point that it could be utilized. They testified that on occasion it was necessary to store part of these units outside on the ground, and this required laying a floor of four by fours, with a top covering of tar paper, that much of the material was damaged from either improper handling or from the elements and was sometimes rusty, and required repainting or refinishing. They said that in

order to fit the cabinets and lockers squarely and evenly against these uneven ceilings and floors it was necessary to install angle irons.

Both Mr. Eshelman and Mr. Swartz, supervisors on the job, said the government engineers were telling them "to do this and to do that" and get the barracks done. Mr. Eshelman said that Mr. Clint Peterson, defendant's Denver representative, told him, "Damn it, Fred, do anything you have to do to get these people satisfied." Mr. Kaiser said he too, discussed the matter with Mr. Peterson, and was told, "We'll have to do it. We've got to maintain schedule." With respect to replacing material that had been damaged through storage on the ground or otherwise, plaintiff said that Mr. Brown, the defendant's supervisor on the job, told him to "Use everything possible—refinish and repaint" and said that "We would be taken care of, that it was a thing that had to be in order to sell the job." Mr. Swartz, the plaintiff's supervisor during the latter part of the work, said that he discussed the difficulties that required this extra work, with Mr. Brown on occasions, and also with Mr. Al Corredor of the Lyon office, and they assured him to go ahead and do whatever was necessary and that they would be taken care of. These three plaintiff's witnesses also testified that the defects in construction which they described and which they claimed necessitated doing the work which they asserted was "extra work", were defects which were usually eliminated by the prime or building contractor and were not customarily left to be performed by the contractor charged only with the duty of *installing* lockers, bookcases and wardrobes.

Mr. Brown, the defendant's representative, who was called as an adverse witness by plaintiff, did not specifically deny the alleged statements which were attributed to him, but denied that he had ever told anyone that plaintiff would be paid for this extra work since the contract provided that such payments could only be made after approval from the home office in writing.

Two claims for "extra work", one for $97.25 and one for $168.69, covering inventories of damaged material were approved by defendant's main office and paid. The defendant presented no oral testimony. Throughout the trial and at the close of plaintiff's evidence, defendant relied strongly upon that provision of the written contract which reads:

"Contractor agrees * * * 7. To make no claim for additional compensation for work done that is not covered by this contract, unless:

   a. Such work and additional compensation is authorized by the company in writing; or

   b. The customer authorizes and agrees, in writing, to pay the company for it."

Defendant contended that since no such written authorization existed, defendant was entitled to a directed verdict.

Defendant also contended that the alleged "extra work" was not actually "extra work" but rather such work as was usually incident to such installations and particularly was necessary if plaintiff was to comply with provision eight of the written contract which states: "When the work covered by the contract is entirely completed, to have the customer indicate his satisfaction with the work of the contractor and the equipment by filling out and signing the space provided on the back of the erection order, at the top, or furnishing other satisfactory evidence of approval."

Is plaintiff precluded from recovery of any "additional compensation" unless such compensation is "authorized in writing" as provided in the written contract or may plaintiff recover for "extra work" in spite of such provisions? We believe that examination of the following cases and brief excerpts from the opinions therein gives us the answer.

Defendant relies strongly and almost, if not quite entirely upon Haughton Elevator Company v. C. Rallo Contracting Company, Inc., Mo.App., 395 S.W.2d 238, 245. There the subcontract was for installation of an hydraulic elevator. Such installation required drilling a "jack hole" to the depth of 45 feet to accommodate the hydraulic lift. Plaintiff encountered rock 17 feet down, which it contended resulted in "extra work". The contract provided: " * * * No extra work * * * will be recognized or paid for, unless agreed to in writing before the work is done * * *." However, the architect's plans and specifications were, by reference, made a part of the contract. These plans, with special reference to the "jack hole", provided: "The contract price is based on the Seller encountering soil free from rock, boulders, building construction members, sand, water, quicksand, underground cavities or any other obstructions or unusual conditions * * *." If any such were encountered the contract price was to be increased by the " * * * cost of labor and material, plus 10% and 10%." Recovery was allowed *as provided by the contract,* including the architect's plans as just set forth. In its opinion the court commented: " * * * we do not deem that the drilling through rock was extra work. * * *". It seems this comment was not necessary for disposition of the case since recovery was allowed *under the specific contract provisions.* However, the fact that rock and the other enumerated hazards were mentioned in the contract indicates the likelihood of one or some of these obstacles being found, so that it could possibly be contended that a contract to drill 45 feet, (with no provisions for possible and probable difficulties) meant the subcontractor was taking his chances. Defendant also specifically invites our attention to the following excerpt from the opinion:

" * * * Extra work, as used in connection with building contracts, means work of a nature not contemplated by the parties and not controlled by the contract. 17A C.J.S. Contracts, * * *

p. 411; * * * 'Extra' work is work entirely independent of the contract, something not required in its performance. * * * Additional work is something necessarily required in the performance of the contract, and without it the work could not be carried out. * * *"

We have no real disagreement with the wordage of these purported definitions, especially if reasonably applied and if considered in conjunction with the additional and clarifying quotations from other authorities which follow.

Beaty v. Brock & Blevins Company, Inc., 319 F.2d 43, 44 (1963), Sixth Circuit, involved a claim by a sub-subcontractor against a subcontractor to recover for extra work. The Court of Appeals said:

" * * * 'Extra work' or 'additional work' in this sense means work other than that contemplated in the original specifications and addenda. * * *"

It is noted that the court treated the phrases "extra work" and "additional work" as synonymous.

In Seaboard Surety Co. v. United States for Use and Benefit of C. D. G., Inc., 355 F.2d 139, 145 (1966), Ninth Circuit, involving a suit for extra work, the court said:

" * * * It is clear that a substantial amount of rework was required by reason of warpage resulting from Desert Builders' delays. We agree with the district court that there was an implied promise by Desert Builders to pay the reasonable value of the extra work and rework which they requested and which was performed by C. D. G."

Macri v. United States for Use of John H. Maxwell & Co., 353 F.2d 804, 807 (1965), Ninth Circuit, is a case where the general contractor was responsible for the foundations upon which the subcontractor would erect tanks. The contractor attempted to remedy defects in the foundations, and then told the subcontractor to go

ahead, after the subcontractor had stated that the defects would cause delay and require extra work. It was held the subcontractor was entitled to recover. In the Macri case the written contract provided that no recovery could be made unless written notice was given in advance, and this had not been done. The Court of Appeals, in affirming plaintiff's judgment said:

"However, compliance with them (written contract requirements) may be waived (citing authorities), and the evidence provides ample support for the conclusion of the district court that in this case there was a waiver. Under the terms of the contract between the parties, Macri was to provide the foundations upon which Maxwell was to erect the tanks. Both the extra work and the part of the delay for which the lower court allowed Maxwell a credit were caused by unevenness of the foundations and other defects in them. Maxwell first complained on commencing the job and advised Macri * * *. Macri did attempt to remedy the trouble but, although unable to do so, ordered Maxwell to proceed. Under these circumstances, equity does not permit Macri to assert surprise and prejudice."

North Shore Sewer & Water, Inc. v. Corbetta Construction Co., 395 F.2d 145, 151 (1968), Seventh Circuit, is a suit by the subcontractor to recover for "extra work" in construction of an industrial sewer which was caused by a hot water leakage from another sewer. In that case the Court of Appeals quotes with approval, the following from 3 A. Corbin, Contracts, p. 349:

"In any kind of contract, if the right of one party to compensation is conditional upon the rendition of some services or other performance by him or on his behalf, it is nearly always a breach of contract for the other party to act so as to prevent or to *hinder and delay* or to *make more expensive* the performance of

the conditions. * * *" (Italics added.)

Our Supreme Court declared the rule on this point in Samuel Kraus Company v. Kansas City, Mo., 315 S.W.2d 758, where it quoted with approval as follows from Annotations 76 A.L.R. 268, 269:

"* * * 'The general rule may be deduced from the decisions that where plans or specifications lead a public contractor reasonably to believe that conditions indicated therein exist, and may be relied upon in making his bid, he will be entitled to compensation for extra work or expense made necessary by conditions being other than as so represented.' * * *"

Based upon the opinions, definitions and conclusions arrived at in the authorities which we have just cited, we conclude: (1) the written contract provisions requiring authorization in advance in writing and agreement in writing to pay, do not preclude a recovery by plaintiff for "extra work", and (2) under the evidence it was for the jury to determine if the services for which plaintiff claimed additional compensation amounted to "extra work" and if so, the amount of recovery therefor. We certainly cannot say, as defendant contends, that *as a matter of law*, these services did not constitute "extra work". The motion for directed verdict was properly denied.

Defendant's other assignments allege error in the giving of Instructions No. 3 and No. 4 (to be considered together), No. 5 and No. 8.

Instruction No. 3, offered by plaintiff and given by the court, reads as follows:

"The term 'extra work' as used in these instructions means work of a nature not contemplated by the parties and not controlled by the contract."

Instruction No. 4, given by the court of its own accord, reads:

"The term 'additional work' as used in these instructions means something necessarily required in the performance of plaintiffs written contract with the defendant."

Defendant's complaint as to these instructions is that they "do not properly define 'extra' and additional work and therefore are erroneously misleading, improper and without foundation in law." We note that the definition of "extra work" is taken verbatim from the definition in the Haughton case, supra, which is strongly relied upon by defendant. The definition of "additional work" is from the same source except the phrase "and without it the work could not be carried out" is deleted. Defendant in its Instruction No. 12, which was refused, offered precisely the same instruction with the deleted phrase added. Defendant offered no other instruction on the point. In addition, by its Instruction No. 6, which was given, the jury was instructed to find for defendant if it found the work done was "additional work as defined in these instructions." We believe the court's comment in Tietjens v. General Motors Corporation, Mo., 418 S.W.2d 75, 86, when it adopted with approval the following language from Fields v. Missouri Power & Light Co., Mo., 374 S.W.2d 17, 25, is quite applicable:

" ' *   *   * What plaintiff contends should have been in the instruction is no more than another way of saying the same thing, but in a way more favorable to plaintiff. No clarifying or amplifying instruction was requested by plaintiff and the trial court cannot be charged with error in giving the instruction it did in the absence of such a request.' *   *   *"

We find no reversible error as to Instructions 3 and 4.

■ Defendant says Instruction No. 8 is erroneous because it improperly modifies

MAI 4.01, and omits the words "direct result". It is further charged that the instruction is "lengthy, complex, argumentative and repetitive." We set out the instruction, which was offered by plaintiff:

"If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you believe to be the fair and reasonable value of the work and labor done or of the services rendered in performing such 'extra work outside of and not covered by the contract' as shown by the evidence."

In our opinion the instruction is neither verbose, complex, argumentative nor repetitive. MAI 4.01 (Red Book, which was in effect when this case was tried) is on the chapter covering "Damages—Personal and Property." It is primarily for use in tort actions, and as defendant concedes would have to be modified in a quantum meruit contract action. In our opinion the "fair and reasonable value of the work and labor done" is a fair legal word description of the measure of recovery and the instruction is not prejudicially erroneous. The assignment is denied.

Defendant offers numerous objections to Instruction No. 5. We set out Instruction No. 5 which was offered by plaintiff and given by the court:

"Your verdict must be for the plaintiff on plaintiff's claim for compensation for extra work and services performed outside of and beyond his contractual duties to defendant if you believe:

First, plaintiff advised defendant's duly authorized agents and representatives that performance of certain work and services deemed by plaintiff to be 'extra work' outside of plaintiff's contractual obligations to defendant was required to meet the requirements of the general contractor and the United States Inspectors, and

Second, such 'extra work' was work of a nature not contemplated by the parties

and not controlled by the contract herein, and

Third, defendant's duly authorized agents and representatives, acting for and in behalf of defendant, in furtherance of defendant's business, requested plaintiff to perform such 'extra work' and gave him assurance defendant would compensate him therefor, and

Fourth, plaintiff performed such 'extra work' shown by the evidence and as directed by defendant's agents and representatives, and

Fifth, defendant has not paid plaintiff for such 'extra work.'"

We also include Instruction No. 7, which was submitted by the defendant:

"Your verdict must be for defendant if you believe defendant's duly authorized agents and representatives had no actual or apparent authority to request plaintiff to perform extra work and give plaintiff assurance defendant would compensate him therefor."

We now list the objections to Instruction No. 5: (1) it does not submit the question of agency; (2) the name of the alleged servant or agent is not substituted for the word "defendant"; (3) it does not require a finding that the alleged agent "was acting within the scope and course of his employment", and Paragraph Third which supposedly submits the issue, does not utilize the quoted language; (4) it does not conform to the "spirit or form of the philosophy and purpose of MAI" because it is "complex, lengthy, partial and argumentative and assumes the work in question was 'extra work'"; (5) the instruction is improper because it requires a finding that "extra" work was required to meet the requirements of the general contractor and the United States Inspectors. Since the evidence established that plaintiff was required to make such installations satisfactory to the contractor such finding must mean that the work was "additional" and not "extra work"; (6) the instruction does not properly distinguish between "extra" and "additional" work; (7) there is no proper definition of agency.

We are of the opinion that neither one nor all of these objections add up to either prejudicial or reversible error. MAI (Red —in effect when the case was tried) gives us five specific definition-of-agency instructions (13.01–13.06). All are for tort actions. There is no specific MAI for a quantum meruit contract action. So in our case we do not have an example of unnecessary deviation from a required instruction. Slagle v. Singer, et al., Mo., 419 S.W.2d 9, 13. Where there is no applicable MAI, the instruction "shall be simple, brief, impartial, free from argument and shall not submit * * * findings of detailed evidentiary facts". 70.01(e), V.A. M.R.

■ In our opinion Instruction No. 5 is in conformity with the rule requirement. It was not here contended that Mr. Brown, Mr. Peterson and Mr. Corredor were not the agents, employees and representatives of the defendant. Since this proposition was not disputed it was unnecessary to instruct on it. The only dispute in this area was as to their authority to request that the extra work be done and to authorize payment for it. Defendant really disputed such authority only on the theory that the written provisions of the contract precluded the finding of such authorization. This contention actually presents a legal question and the trial court properly denied defendant's contention with respect to it. The question as to these agents' authority was submitted to the jury by Instruction No. 5 which as a prerequisite to a plaintiff's verdict required a finding that they "were acting for and in behalf of defendant in furtherance of defendant's business * * *", and in defendant's Instruction No. 7 which required a defendant's verdict if the jury found that defendant's agents "had no actual or apparent authority to require plaintiff to perform extra work and give plaintiff assurance defendant would compensate him therefor." This affirma-

tive converse instruction submitted the question as defendant presented it. In our opinion the controverted issue was properly submitted.

■ We do not find that Instruction No. 5 is complex, partial or argumentative, but rather it presents the issue clearly and concisely. It does not assume the services mentioned were "extra work" but in fact refers to "work and services deemed by plaintiff to be 'extra work' ". The objections which we have numbered 5 and 6 again raise the issue as to the legal effect of the written provisions of the contract and complain that the phrases "extra work" and "additional work" are not "distinguished" and not properly defined. We see no real difference between extra work and additional work. However, as we have already pointed out, the court gave the definitions as to these two phrases that were suggested in the Haughton case, which defendant relies upon so much. Defendant cites Chandler v. New Moon Homes, Inc., Mo., 418 S.W.2d 130 (an automobile accident case) and Peak v. W. T. Grant Company, Mo., 409 S.W.2d 58 (a suit for false arrest), to the effect that if agency is disputed then it must be defined in the instructions. These two en banc decisions so hold as to those two tort actions and we agree that it must be defined in a contract action, if disputed. However, the agency of defendant's representatives was not here disputed or even in question. Only their authority was disputed and this only to the extent it was impaired by the provisions of the written contract. In fact defendant, by its Instruction No. 7 submitted to the jury the question as to its agents' "actual or apparent authority".

In our opinion the controversial fact issue was properly submitted and agency was here defined to the extent it had been disputed.

We find no reversible error and the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGH-MER, C., is adopted as the opinion of the Court.

All concur.