**Janine G. CHOHLIS, Appellant,**
v.
**CESSNA AIRCRAFT COMPANY, Appellee.**
No. 84–1387.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 18, 1985.
Decided May 1, 1985.
Rehearing and Rehearing En Banc Denied June 7, 1985.

---

902

Charles J. McMullin, St. Louis, Mo., for appellant.

Eugene K. Buckley, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON, and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The primary issue in this appeal is whether the district court[1] erred in instructing the jury concerning Cessna Aircraft Company's defense to Janine Chohlis' strict liability claim. Because the instruction fairly and adequately stated the substantive law, and because we conclude there is no other trial error, we affirm the judgment against Chohlis.

John Chohlis was killed when a plane in which he was a passenger crashed as the pilot, Joseph Walker, was preparing to land. The evidence shows that the crash was caused by engine failure due to lack of fuel. The fire that ensued upon the crash, however, demonstrated that the main tanks contained a significant quantity of fuel. Janine Chohlis, John's widow, filed a wrongful death action in Missouri state court against the pilot's estate and Cessna, the manufacturer of the plane. Following Chohlis' settlement with the estate, Cessna removed the suit on diversity grounds under 28 U.S.C. § 1441 (1982).[2]

Evidence was submitted to prove two theories, negligence and strict liability, based on the design of the plane's fuel system. The plane was equipped with four fuel tanks: a primary and auxiliary tank on each wing. Two fuel gauges served four tanks; the gauges normally displayed the levels in the tanks being used. By flipping a switch, however, the levels in the tanks not in use could be displayed. An amber light on each gauge indicated when the auxiliary tanks were in use.

The auxiliary tanks held about three-fifths of the main tanks' capacity. Nevertheless, a given amount of fuel in the auxiliary tanks would sustain the engines for a significantly shorter time than the same quantity in the main tanks. This was due to the bypass feature in the fuel injection system, which delivered to the engines more fuel than they could use. The excess or bypass fuel was emptied into the main fuel tanks, whether or not it originated from the auxiliary tanks. Thus, the auxiliary tanks contained less accessible fuel than the main tanks.

The owner's manual stated that the main tanks should be used during takeoff, landing, and all emergency operations. It also advised that because of the fuel injection diversion, the "auxiliary tanks will run dry sooner than may be anticipated." Tr. 5-122. A checklist for landing preparation directed the pilot to select the main tanks on both wings. This selection was to be made before the landing gear was lowered. In addition, a placard posted in the cockpit directed that the first step in the landing preparation should be switching to the main tanks.

The plaintiff's experts described the fuel system as defective and the accompanying instructions as inadequate. For example, the manual "recommended" that the pilot not operate on the auxiliary tanks under 1,000 feet altitude. One of the plaintiff's experts stated that often a pilot will be in a lower altitude, perhaps 800 feet, when the descent checklist is initiated. He testified that the manual should have stated: "Do not operate on auxiliary tanks below 1,000 feet." In addition, he criticized the cockpit placard as deficient in not advising the pilot of how many minutes of operation the auxiliary tanks would sustain. Other experts

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri.

2. Chohlis argues that removal was improper because the pilot's estate, a defendant whose citizenship was not diverse as to the plaintiff, had not been adequately severed from the state court suit at the time of removal. It is also contended that Cessna was dilatory in removing and thus should have been barred by "laches." The first question was properly decided by a magistrate, who concluded that a settlement be-tween Chohlis and the pilot's estate was final enough to support removal. *See Erdey v. American Honda Co.,* 96 F.R.D. 593, 597–99, *rehearing granted,* 558 F.Supp. 105, 106–07 (M.D.La.1983); *Bumgardner v. Combustion Eng'g,* 432 F.Supp. 1289, 1291 (D.S.C.1977); *Gable v. Chicago, Minn. St. Paul & Pac. Ry.,* 8 F.Supp. 944, 946 (W.D.Mo.1934). The second contention is without merit. The magistrate found that Cessna had moved for removal promptly after it discovered the settlement with the pilot's estate. *See Erdey,* 96 F.R.D. at 599.

testified that the airplane should have been equipped with a warning light to inform the pilot when the tanks in use were running low. In sum, the plaintiff presented evidence that the plane was defective because the "unnecessarily complex fuel system" could induce pilot error and because the company had not provided instructions, warnings, or devices sufficient to prevent this error. The defendant's experts testified that the fuel system was not unduly complicated and that additional gauges and warning lights were unnecessary. They also testified that the most likely cause of the crash was that the pilot had been using the auxiliary tanks while landing and ran them dry. They classified as pilot error the failure to switch to the main tanks before landing.

After a seven-day jury trial, the case was submitted under a strict liability theory only and the critical issue to be decided by the jury was whether the airplane was defective. A verdict was returned for Cessna. The district court denied Chohlis' motion for a new trial, and this appeal followed.

## I.

Ten of Chohlis's allegations of error concern Instruction No. 7, which provided:

> You are instructed that your verdict must be for defendant Cessna Aircraft Company if you believe that Joseph Walker's airplane crashed, not because of any defective condition of the airplane, but because Joseph Walker failed to follow the placard, checklist and owner's manual and failed to switch to his main gas tanks before landing and ran his auxiliary tanks dry.

It was followed by Instruction No. 7(a), which stated: "More than one person may be to blame for causing an injury. If you decide the defendant sold a dangerously defective product resulting in the death of John Chohlis, it is not a defense that some person who is not a party to this suit may also have been to blame."

Chohlis argues that Instruction No. 7 violates Missouri procedural rules governing instruction, particularly the requirements of Missouri Approved Instruction No. 1.03 (3d ed. 1981). On numerous occasions, we have made plain that a district court is not required to give the precise instruction set out in MAI and that the grant and denial, particulars, and form of instructions are matters of procedure controlled by federal law and the Federal Rules of Civil Procedure. *E.g., Hrzenak v. White-Westinghouse Appliance Co.,* 682 F.2d 714, 719–720 (8th Cir.1982); *see Roth v. Black & Decker,* 737 F.2d 779, 783–84 (8th Cir.1984); *Crues v. KFC Corp.,* 729 F.2d 1145, 1151–52 (8th Cir.1984). We stated recently:

> A district judge has broad discretion in the choice of the form and language of his instructions; "as long as the entire charge fairly and adequately contains the law applicable to the case, the judgment will not be disturbed on appeal." * * * In reviewing instructions to determine if they correctly set forth the applicable law, we must read and consider the charge as a whole.

*Monahan v. Flannery,* 755 F.2d 678, 681 (8th Cir.1985) (quoting *Board of Water Works Trustees v. Alvord, Burdick & Howson,* 706 F.2d 820, 823 (8th Cir.1983)). In the exercise of this broad discretion, state-mandated instruction forms may be given in their entirety or mixed with other instructions that the district judge feels are appropriate. Certainly, the MAI verdict-directing instructions, as well as those of the other states in this circuit, are useful in outlining the substantive law elements authorizing recovery. *See, e.g., Laney v. Coleman Co.,* 758 F.2d 1299, 1303–1304, (8th Cir.1985) (discussing substantive requirements concerning punitive damages in MAI instructions and accompanying comments). On the other hand, many of the states, significantly Missouri, have developed extremely complex rules and procedures and voluminous case law governing instructions. The district judge need not be unduly concerned with arguments asserting the state's procedural authority relating to instructions as long as the sub-

stantive law is correctly stated in a form consistent with the federal procedural law governing instructions. Similarly, on appeal we need not consider the intricacies of state procedural instruction law, as we are asked to do here. Rather, we review the instructions as a whole only to determine that they fairly and adequately state the applicable law.

▪ Chohlis first argues that Instruction No. 7 was a "sole cause" instruction given in violation of MAI No. 1.03, which prohibits the giving of an instruction by a defendant that hypothesizes the conduct of someone other than the defendant as the sole cause of the occurrence. MAI No. 1.03 makes plain that it is a procedural rule and the conduct of a third party as a defense may be submitted generally in a form Missouri rules denominate as a "converse" instruction. The failures of the pilot were a proper substantive consideration. Instruction No. 7(a), however, properly stated that a third party's actions alone were not a defense to Chohlis's claim.[3]

In a related argument, Chohlis claims that Instruction No. 7 failed to hypothesize an issue sufficient to defeat her claim. The plaintiff's verdict-directing instruction required finding that the airplane when sold was "in a defective condition unreasonably dangerous when put to a reasonably anticipated use" and that the defect caused the crash while the plane was being used as reasonably anticipated. Instruction No. 7 submits Cessna's defense that the crash was caused not by the defect, but rather by certain pilot failures. Instruction No. 7(a) made clear that the pilot's blameworthiness would not be a defense if the jury decided that Cessna sold a dangerously defective product.[4] In reviewing instructions, the issue is whether the charge as a whole is fair and adequate, and it properly framed these issues for the jury.

Moreover, Chohlis's inaccurately characterizes Instruction No. 7 as injecting "negligence." The charge did not concern whether the pilot had used ordinary care. Rather, it presented the issue of pilot failures and the jury was not required to find that such failures were negligent. The pilot's conduct was relevant to determining whether the crash was a "direct result" of any product defect. The pilot's omissions are also properly considered in relation to whether the plane, manual, and placard were used as reasonably anticipated. Thus, Instruction No. 7 did not erroneously inject "negligence" in a strict liability case.[5]

Chohlis argues that Instruction No. 7 assumes that the airplane had no defective condition and fails to hypothesize facts, allowing the jury to speculate as to what the defective condition of the airplane might have been, thus creating a "roving commission." These arguments are stated in the traditional language of Missouri procedural law concerning instructions. The critical substantive element in a strict liabil-

---

**3.** Chohlis's argument would take us even beyond MAI to the dim and distant days when "sole cause" instructions were the subject of considerable judicial attention in Missouri state courts. Looking back to this authority, Instruction No. 7 is not a "sole cause" instruction as it does not require conclusions that the omissions of Joseph Walker were negligent or that they were the sole cause of the occurrence, essential elements in sole cause instructions. *See generally* W. Raymond, *Missouri Instructions to Juries* § 156, at 165 (1942); McCleary, *The Defense of Sole Cause in the Missouri Negligence Cases*, 10 Mo.L.Rev. 1 (1945).

**4.** Chohlis may be arguing here, as she did in the district court, that pilot failures were caused by a product defect in the form of inadequate operating instructions or warnings, and that Instruc-

tion No. 7 is inconsistent and improper under these circumstances. She did not, however, request a strict liability verdict-directing instruction on design-induced errors. Failure to warn was tendered in a negligence instruction which was refused on substantive grounds, *see* p. 906 *infra*, and Chohlis declined an instruction prepared by the court on this issue. This more specific and narrow theory may well have called for differing defensive instructions, but this is not the case before us.

**5.** Chohlis also contends that Cessna waived the "affirmative defense" of pilot error by failing to raise it in the answer. No timely objection to Instruction No. 7 was made on this ground before the district court. Thus, we will not review it. *See* Fed.R.Civ.P. 51.

ity claim is defective condition. The instructions properly required the jury to make findings (not assumptions) as to whether the crash was caused by a defective condition.

The other objections to the instruction raised by Chohlis need not detain us. Suffice it to say that nearly every objection under Missouri instruction practice has been touched upon and as we have seen, they are simply not a sufficient basis to find error in the instructions. Considered as a whole, the instructions, including Instruction No. 7, fairly and adequately stated the applicable state law. Neither the district court nor this court is required to determine whether similar procedural arguments might succeed in Missouri courts.

## II.

Chohlis contends that the district court erred in refusing to give the plaintiff's "multiple negligent acts" verdict director. The refusal was not based on the notion that strict liability and negligent verdict direction are mutually exclusive. Rather, the tendered instruction was refused on the grounds that it inaccurately stated Missouri products liability law.

■ MAI No. 25.06 details the *substantive* law of negligence in products liability. Among other things, the plaintiff must show that the product was dangerous when put to a reasonably anticipated use and that the defendant knew or should have known of this danger. The instruction that Chohlis tendered omitted the element of reasonably anticipated use.[6] Because the requested instruction erroneously stated the substantive law, the court did not err in refusing to give it. *See Brown v. Cedar Rapids & Iowa City Ry.*, 650 F.2d 159, 165 (8th Cir.1981).[7]

■ Chohlis also claims that the court committed reversible error in failing to give an instruction concerning circumstantial evidence. No such instruction was requested or tendered, so the issue may not be raised on appeal.

## III.

■ Chohlis also argues that the court erred in denying her motion for a new trial on the ground that the verdict was against the weight of the evidence. Usually no error can be predicated on such a denial. *SCNO Barge Lines, Inc. v. Anderson Clayton & Co.*, 745 F.2d 1188, 1193 (8th Cir.1984). We have seriously questioned whether even an abuse of discretion on this ruling would justify reversal. *Id.* at 1194. Chohlis does not argue that the district court's denial of the motion was an abuse of discretion. Rather, she seeks a fresh determination that the verdict is against the weight of the evidence. We may not engage in such an inquiry. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2819, at 123–27 (1973).

■ Finally, Chohlis assigns error to a variety of discretionary rulings by district court. These decisions include the refusal to permit the testimony of an expert who was not identified to the defendants until twelve days before trial;[8] the failure to correct various statements in the defendant's closing argument,[9] and the exclusion of some photographs from evidence.[10] All these rulings are reviewable only for abuse of discretion. Neither the plaintiff's argu-

6. The plaintiff refused the court's offer to give an instruction that paralled MAI No. 25.06.

7. The plaintiff argues that the court erred in refusing the tendered instruction taken from *Vasina v. Grumman Corp.*, 644 F.2d 112 (2d Cir.1981). Whether or not the *Vasina* case and its instructions have any application here, we find that Chohlis failed to properly preserve the error assigned in the court's refusal to give these instructions. Although the plaintiff tendered these instructions to the court before trial, no

objection was made concerning their refusal. *See* Fed.R.Civ.P. 51.

8. *See Federal Aviation Admin. v. Landy,* 705 F.2d 624, 634–35 (2d Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 243, 78 L.Ed.2d 232 (1983).

9. *See In re IBP Confidential Bus. Documents Litig.,* 755 F.2d 1300, 1318–19 (8th Cir.1985).

10. *See United States v. Whitfield,* 715 F.2d 145, 147 (4th Cir.1983).

ments nor the record persuades us that the court abused its discretion.

The judgment of the district court is affirmed.