**H.H. ROBERTSON COMPANY, CUPPLES PRODUCTS DIVISION, Appellee,**

v.

**V.S. DiCARLO GENERAL CONTRACTORS, INC., Appellant (Three Cases).**

**Nos. 91–1135, 91–1431 and 91–1783.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1991.

Decided Dec. 10, 1991.

Mark G. Arnold, St. Louis, Mo., argued (Jeffrey J. Kalinowski and Catherine Hope Craig, on brief), for appellant.

Charles A. Weiss, St. Louis, Mo., argued (Thomas C. Walsh and Douglas W. King, on brief), for appellee.

Before McMILLIAN, Circuit Judge, and FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

In this diversity case, H.H. Robertson, Cupples Products Division (Cupples), brought a contract action against V.S. DiCarlo General Contractors, Inc. (DiCarlo), and DiCarlo counterclaimed. A jury found for Cupples, and DiCarlo appeals. We affirm in part and reverse in part.

I.

DiCarlo was the general contractor for the construction of the Two Pershing Square office building in Kansas City, Missouri. DiCarlo constructed the concrete skeleton of the building and subcontracted with Cupples to install the exterior walls. On two quadrants of the building, Cupples agreed to install a glass curtain wall (glass affixed to an aluminum frame). On the other two quadrants, Cupples installed strip windows (glass and aluminum in strips between precast concrete panels).

The parties' contract required that Cupples commence work when notified by DiCarlo and "diligently prosecute the same in conformity with [DiCarlo's] progress schedule as updated." A rider accompanied the contract. It provided that Cupples would begin the layout of the work on January 27, 1986, and would begin erecting the curtain wall when DiCarlo had finished its work on five floors and had removed most of the wooden supports ("reshores") from those floors. The rider further provided that Cupples would substantially complete its work within twenty-eight weeks, with two conditions. First, at least three floors of precast work had to be ready within thirty days after Cupples began erecting the curtain wall. Second, DiCarlo had to make available to Cupples one additional floor every two weeks for curtain wall work. The rider's provisions were to apply "[n]otwithstanding anything contained in the Subcontract or otherwise, to the contrary."

Although construction was to be substantially completed by August 1986, the building was not finished on time. DiCarlo blamed Cupples and withheld the last progress payment due Cupples (the "contract retention amount"). Cupples sued for breach of contract and in quantum meruit, and DiCarlo counterclaimed for breach of contract.

According to DiCarlo, the twenty-eight week deadline began to run on January 27,

1986, when Cupples began the layout work. At trial, DiCarlo presented evidence that Cupples did not enclose the building until October 1986 and did not render it watertight until December 1986. Thus, in DiCarlo's view, Cupples failed to perform according to the agreement.

Cupples, on the other hand, blamed DiCarlo's mismanagement for any delays. Cupples also claimed that it did not have to meet the twenty-eight week deadline because three floors of precast work were not ready within thirty days, as provided by the rider. Even if the twenty-eight week schedule did apply, and even if DiCarlo's actions did not excuse any delay, Cupples argued, it still met the schedule. According to Cupples, the clock began to run on March 5, 1986, when DiCarlo cleared the reshores from five floors. Cupples further maintained that its work was substantially completed by mid-September, within twenty-eight weeks of March 5, 1986.

In addition, Cupples contended it performed work which fell outside the scope of the contract. Cupples' evidence indicated that it had to help another subcontractor fix the layout lines for the precast panels so they would be installed properly. Cupples also introduced evidence that some of the panels had been installed incorrectly and that Cupples had to perform an elevation survey to determine where this had occurred. In addition, Cupples introduced evidence that DiCarlo's mismanagement of the project resulted in areas where Cupples could not install the walls in sequence as the work progressed. Cupples had to return to these areas later, which, it claimed, hampered its efficiency and contributed to delay.

The jury awarded Cupples $373,039.46 on its breach of contract claim and $25,664.94 on its quantum meruit claim and rejected DiCarlo's counterclaim. Although evidence of prejudgment interest had been submitted to the jury, the issue was withdrawn from its consideration and was instead left to the district court. In response to a post-trial motion, the district court awarded Cupples interest on both the breach of contract and quantum meruit awards. It com-

puted the interest for the breach of contract award by considering only the contract retention amount due Cupples under the contract.

DiCarlo appeals, arguing that the district court should not have submitted the quantum meruit claim to the jury. DiCarlo also argues that the district court erroneously instructed the jury with regard to each claim and that it should not have awarded Cupples prejudgment interest.

## II.

DiCarlo argues that the quantum meruit claim should not have been submitted to the jury. First, DiCarlo points out that under Missouri law a party may recover for quantum meruit, in addition to breach of contract, only where the quantum meruit claim is limited to work outside the scope of the contract. *See Steinberg v. Fleischer*, 706 S.W.2d 901 (Mo.App.1986); *Husar Indus., Inc. v. A.L. Huber & Son, Inc.*, 674 S.W.2d 565 (Mo.App.1984); *Kaiser v. Lyon Metal Products, Inc.*, 461 S.W.2d 893 (Mo. App.1970). DiCarlo maintains that since Cupples presented no evidence that any work it performed fell outside the scope of the contract, the district court should not have submitted this claim to the jury.

■ A claim may be submitted to a jury if, viewing the evidence in the light most favorable to the claimant, giving the claimant the benefit of all reasonable inferences, and disregarding the other party's evidence except as it aids the claimant's cause, there is substantial evidence to support it. *Emerick v. Mut. Benefit Life Ins. Co.*, 756 S.W.2d 513, 518 (Mo.1988). If Cupples produced substantial evidence that any of the work it performed fell outside the scope of the contract, its quantum meruit claim was properly submitted to the jury.

■ The contract required that Cupples install the strip windows. Cupples was not responsible, however, for installing the precast panels between which the strip windows fit. Cupples produced evidence that it helped perform the layout work in preparation for installation of the precast panels, as well as a survey of the precast panels to

indicate where they had been incorrectly installed. In addition, the rider to the contract required that Cupples "provide[ ] for one comeback to complete all leave out areas requested by [DiCarlo]." Witnesses for Cupples, however, testified that Cupples was forced to return on more than one occasion. We therefore conclude that there was sufficient evidence to justify submitting the quantum meruit claim for extra work to the jury. *See Kaiser*, 461 S.W.2d 893.

■ Second, DiCarlo maintains that the quantum meruit claim should not have gone to the jury because Cupples did not produce proper evidence of the reasonable value of its services. Under Missouri law, a claimant seeking recovery in quantum meruit bears the burden of proving the reasonable value of the services provided, and expert testimony is required to assist the trier of fact in determining what is reasonable. *Baron v. Lerman*, 719 S.W.2d 72 (Mo.App.1986).

■ A claimant may meet its burden of proving the reasonable value of its services with witnesses who have expertise in the subject matter and who have first hand knowledge of the services which the claimant rendered. *See Richard B. Curnow, M.D., Inc. v. Sloan*, 625 S.W.2d 605 (Mo. 1981) (doctor's expertise sufficiently established by his professional experience and first hand knowledge, thus he was qualified to give testimony regarding the value of his own services); *Williams Carver Co. v. Poos Bros., Inc.*, 778 S.W.2d 684 (Mo. App.1989) (employee's thirty-nine years' experience with refrigeration systems, plus first hand knowledge of the work plaintiff had performed, qualified him to testify as to the reasonable value of the plaintiff's services).

Cupples supported its quantum meruit claim with the testimony of its employees. Each employee was experienced in the curtain wall industry, and each was knowledgeable of the work Cupples performed at Two Pershing Square. As such, their testimony satisfied Cupples' burden of proving the reasonable value of its services.

## III.

■ DiCarlo maintains that the district court improperly instructed the jury as to Cupples' breach of contract and quantum meruit claims, as well as to DiCarlo's counterclaim. A district court exercising its diversity jurisdiction need not "give the precise instruction set out" in the Missouri Approved Instructions. *Chohlis v. Cessna Aircraft Co.*, 760 F.2d 901, 904 (8th Cir. 1985). The form of the instructions is a procedural matter governed by federal law, *id.*, and the district court "has broad discretion to instruct the jury in the form and language it considers a fair and adequate presentation of substantive law." *Grogan v. Garner*, 806 F.2d 829, 836 (8th Cir.1986) (citation omitted). Moreover, "[t]he rule of this circuit is clear: jury instructions are sufficient if they state the governing law fairly when read as a whole, and considering each instruction in light of the whole." *Bolin v. Black*, 875 F.2d 1343, 1348 (8th Cir.), *cert. denied*, 493 U.S. 993, 110 S.Ct. 542, 107 L.Ed.2d 539 (1989). *Accord Crues v. KFC Corp.*, 768 F.2d 230 (8th Cir.1985).

■ DiCarlo attacks the jury instruction for Cupples' breach of contract action[1] on

---

1. The instruction reads as follows:

   Your verdict must be for Cupples Products on the breach of contract claim if you believe: First, Cupples and V.S. DiCarlo entered into a contract whereby plaintiff agreed to manufacture and erect a curtain wall on the Two Pershing Square Building in Kansas City and V.S. DiCarlo agreed to pay Cupples for such work, and
   Second, Cupples substantially performed its contract, and
   Third, V.S. DiCarlo breached its contract in one or more of the following ways:

   (a) V.S. DiCarlo failed to pay plaintiff all the amounts due Cupples under the contract.
   (b) V.S. DiCarlo failed to make payments to Cupples for extra or changed work.
   (c) V.S. DiCarlo failed to properly schedule activities and coordinate the work so Cupples would not be delayed in its work.
   (d) V.S. DiCarlo's conduct or the conduct of the owner, architect, or V.S. DiCarlo's other subcontractors obstructed, interfered with or delayed the planned sequence or progress of Cupples [sic] work by, among other things, installing precast panels which were not set on the building correctly, by not providing the

three grounds. First, DiCarlo asserts that the first paragraph of the instruction misstated Cupples' obligation under the contract because it did not require the jury to find that Cupples complied with the contract's scheduling requirements. According to DiCarlo, the first paragraph improperly led the jury to believe that Cupples' only obligation was "to manufacture and erect a curtain wall," with no reference to Cupples' obligation to erect the wall within a particular time.

If the second paragraph of the breach of contract instruction had read "Second, Cupples substantially performed the manufacture and erection of the curtain wall," we might agree with DiCarlo. The second paragraph, however, required that the jury determine whether Cupples "substantially performed its *contract*." The contract clearly detailed Cupples' obligation to complete its work within twenty-eight weeks. The contract was in evidence, and the jury requested and received a copy of it during its deliberations. Thus, the instruction as a whole fairly and adequately stated Cupples' obligation of timely performance.

■ DiCarlo next argues that the district court erred by not defining the phrase "substantially performed" in Cupples' breach of contract instruction. DiCarlo points out that this phrase is a technical one that ordinarily should be defined. *Yamnitz v. Polytech, Inc.*, 586 S.W.2d 76 (Mo.App.1979). DiCarlo maintains that the district court's failure to define the term left the jury without guidance as to Cupples' obligation to perform its contract in a timely manner.

■ We will not reverse for instructional error unless the instruction, read as a whole, failed to fairly and adequately present the relevant state law. Cupples' duty of timely performance was adequately presented to the jury. Moreover, the defi-

nition of substantial performance, which DiCarlo argues should have been presented to the jury, would not have rendered the issue of Cupples' time obligation any clearer. It would have defined substantial performance as "performance of all important parts of the contract with only slight variations." The jury was instructed to determine whether Cupples had performed its contract, and the contract clearly detailed the deadline for completion. We therefore hold that the omission of the definition of substantial performance did not render the instructions inadequate.

Finally, DiCarlo's assigns error to subparts (a) and (d) of the third paragraph of the breach of contract instructions. Subpart (a), it claims, compounded the error resulting from the failure of the instructions to specify Cupples' duty to perform in a timely manner, because it erroneously led the jury to believe that Cupples' timely performance was not a precondition to DiCarlo's duty to pay. Because the instructions adequately addressed Cupples' obligation of timely performance, we reject this argument.

■ DiCarlo objects to subpart (d) because, in its view, it misstates the contract and the law. Under DiCarlo's interpretation, subpart (d) allows Cupples to recover if it was prevented from working according to its own schedule. Rather, DiCarlo maintains, the contract required Cupples to adjust its schedule to fit DiCarlo's.

We do not read subpart (d) in this way. To the contrary, the instruction fairly and adequately describes the duty not to unreasonably hinder another party's performance. *See Veterans Linoleum & Rug, Inc. v. Tureen*, 432 S.W.2d 372, 376 (Mo.App. 1968).

■ DiCarlo next argues that the jury instruction on Cupples' quantum meruit claim was erroneous.[2] As noted above, a

atrium to Cupples in a timely manner, and by leaving out areas of the precast panels and atrium area, and

Fourth, Cupples was thereby damaged.
Appellant's Appendix at 78–79.

**2.** The jury instruction reads as follows:

As an alternative theory to its claim for breach of contract, Cupples' claim [sic] against V.S. DiCarlo for the reasonable value of the materials and services furnished. In the event you do not find for Cupples on its claim of breach of contract, you may then

party may recover for both quantum meruit and breach of contract, but only where the quantum meruit award is for work outside the scope of the contract. *See Kaiser,* 461 S.W.2d 893. DiCarlo charges that the quantum meruit instruction failed to limit the jury's consideration to those services not encompassed by the contract. We agree.

The instruction allowed the jury to award Cupples damages in quantum meruit if DiCarlo accepted "materials and services for the curtain wall," but failed to pay for them. Certainly some of the materials and services Cupples provided were within the scope of the contract, since the contract's very purpose was the construction of the curtain wall. The instruction, however, did not distinguish between materials and services within the scope of the contract versus those outside the scope of the contract. Lacking such clarifying language, the instruction failed to fairly and adequately present Missouri law governing a recovery for quantum meruit in addition to a recovery for breach of contract.

■■■ In its final attack on the jury instructions, DiCarlo argues that the district court erred by not accepting its proposed instruction for its counterclaim. That instruction listed three time obligations incumbent upon Cupples: the twenty-eight week schedule described in the contract rider; the duty to prosecute the work in a diligent manner in accordance with DiCarlo's progress schedule; and the duty implied by law to complete the work in a reasonable time.

■■■ A claimant is generally entitled to an instruction setting forth its theory of the case, but only where the instruction is legally correct and supported by the evidence. *Federal Enterprises, Inc. v. Greyhound Leasing & Fin. Corp.,* 786 F.2d 817, 820 (8th Cir.1986). *See also Smith v. Firestone Tire & Rubber Co.,* 755 F.2d 129, 135

(8th Cir.1985) (party not entitled to jury instruction in federal court if his theory not supported by state law).

DiCarlo relies upon *Commercial Contractors, Inc. v. U.S. Fidelity & Guar. Co.,* 524 F.2d 944 (5th Cir.1975), as authority for its assertion that Cupples had an obligation to complete its work within a reasonable time, regardless of the twenty-eight week schedule specified in the contract rider. In *Commercial Contractors,* the court did not hold that the duty to perform within a reasonable time obligates a party to perform before the termination of a deadline specified in the contract. Instead, the court stated that it would imply an obligation to perform within a reasonable time only where the deadline specified in the contract had been waived by the party accepting performance. *Id.* at 954. *See also Estate of Kraeuchi v. Centerre Trust Co.,* 729 S.W.2d 566, 568 (Mo.App.1987) ("Where no time limit is expressly stated in the contract, the law implies a reasonable time.") (citing *Artcraft Cabinet, Inc. v. Watajo, Inc.,* 540 S.W.2d 918, 925 (Mo.App. 1976)). In this case, however, the twenty-eight week deadline was clearly specified in the contract. Cupples was not obligated to render its performance prior to that deadline. Since DiCarlo has shown no basis in Missouri law to support inclusion of the reasonable time obligation within its jury instruction, the district court properly rejected it.

## IV.

■■■ DiCarlo claims that the district court erred by awarding Cupples prejudgment interest. First, DiCarlo argues that the court's grant of interest on the breach of contract award constitutes double recovery, because the jury had already awarded Cupples interest on that claim. To support this argument, DiCarlo points out that the

consider Cupples' claim for the reasonable value of materials and services furnished.
Your verdict must be for Cupples on its claim for the reasonable value of materials and services furnished if you believe:
First, Cupples furnished to V.S. DiCarlo materials and services for the curtain wall and

related components for the Two Pershing Square building in Kansas City, and
Second, V.S. DiCarlo accepted such materials and services, and
Third, V.S. DiCarlo failed to pay Cupples for those materials and services.
Appellant's Appendix at 79–80.

jury heard evidence concerning what the interest recovery should be, and that the court instructed the jury to award Cupples "such sum as you believe will fairly and justly compensate it." When deliberating, the jury asked for and received Cupples' summary of damages. That summary listed the various items of damages Cupples claimed and specified Cupples' claim for interest on the first three items. The jury's breach of contract award equalled, to the penny, the sum of the first three items on the summary plus the claimed interest. DiCarlo thus argues that, because the jury already included prejudgment interest in its award, Cupples obtained a double recovery when the district court awarded it prejudgment interest.

This court's decision in *California & Hawaiian Sugar Co. v. Kansas City Terminal Warehouse Co.*, 788 F.2d 1331 (8th Cir.1986), is similar to the instant case. There, the jury heard evidence of the amount of interest the plaintiff claimed. During its deliberations, the jury had before it the plaintiff's damages chart, which included prejudgment interest figures. Since no instruction had been given on the issue of prejudgment interest, the court refused to find that the jury had awarded it within its general verdict. *Id.* at 1334. The court presumed that the jury followed the instructions given it.

Likewise, this jury was not specifically instructed to award interest. We, like the court in *California & Hawaiian Sugar,* presume that the jury followed those instructions. Even if that presumption may be overcome, DiCarlo has failed to do so here. The jury did not specify which items among Cupples' damages summary it chose to award. Instead, the jury returned a general verdict. We therefore cannot conclude that the jury included prejudgment interest within that general verdict. It follows that the district court's interest award did not constitute a double recovery.

Finally, DiCarlo argues that the district court should not have awarded Cupples prejudgment interest, because Cupples' claims were unliquidated. In Missouri, "[i]nterest is allowable where the trial court finds the amount indisputably due under the contract. In order to be liquidated as to bear interest a claim must be fixed and determined or readily determinable...." *Mel–Lo Enterprises, Inc. v. Belle Starr Saloon, Inc.*, 716 S.W.2d 828, 829–30 (Mo.App.1986) (citations omitted).

The district court did not award Cupples prejudgment interest on all the damages Cupples claimed for breach of contract. Rather, it awarded Cupples interest only on the contract retention amount. We agree that the contract retention amount was indisputably due under the contract, and that its amount was readily determinable. Thus the district court did not err in awarding Cupples prejudgment interest on that amount.

We have considered the remainder of DiCarlo's arguments, and we find that they are without merit.

That portion of the judgment entered on the verdict for the quantum meruit award, as well as the prejudgment interest thereon, is reversed. The remainder of the judgment is affirmed, and the case is remanded to the district court for further proceedings consistent with this opinion.